UNITED STATES of America, Appellee,

v.

Frank E. READY, Defendant–Appellant.

Nos. 840, 841, Dockets 95–1211(L), 95–1252.

United States Court of Appeals, Second Circuit.

Argued Jan. 3, 1996.

Decided May 2, 1996.

George A. Yanthis, Assistant United States Attorney, Albany, NY (Thomas J. Maroney, United States Attorney for the Northern District of New York, Albany, NY, on the brief), for Appellee.

Philip L. Weinstein, The Legal Aid Society, Federal Defender Division, Appeals Bu-

reau, New York City, for Defendant–Appellant.

Before: McLAUGHLIN, JACOBS and CALABRESI, Circuit Judges.

JACOBS, Circuit Judge:

Frank Ready pled guilty to wire fraud under 18 U.S.C. § 1343. His plea agreement included a waiver of his right to appeal his sentence. His sentence included a penalty of restitution. On appeal, he claims that the restitution penalty was imposed illegally. The Government argues that Ready's waiver of his right to appeal bars this challenge, and that in any case his claim fails on the merits.

After the parties filed their appellate briefs but prior to oral argument, we decided *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir.1995), in which we held that a defendant may waive his right to appeal an illegally imposed sentence. At oral argument the Government stressed that *Yemitan* provided categorical support for its waiver argument. On questioning, however, the Government conceded that the waiver in Ready's plea agreement does not constitute a blanket waiver of his appellate rights, and that, under *Yemitan*, the circumstances surrounding his plea and the terms of the agreement must be scrutinized to determine the waiver's scope.

We conclude that the waiver contained in Ready's plea agreement does not, under the circumstances presented, operate as a waiver of Ready's right to appeal his restitution penalty. Reaching the merits of Ready's challenge to his sentence, we also decide that the restitution penalty was legally and properly imposed. We discuss in this opinion only our conclusion that Ready did not waive his right to appeal. Ready's substantive challenges to his restitution penalty raise no new legal issues, and we reject them in a summary order also issued today.

## I

There are two plea agreements in this case. One of them contains a waiver of Ready's right to appeal; the other does not. Ready entered into the first plea agreement with the Office of the United States Attorney for the Northern District of New York, pleading guilty to Count Five of a five-count indictment that charged him with a scheme to defraud the federal government (the "New York plea agreement"). Count Five concerned a telephone conversation that furthered the scheme, in violation of the wire fraud statute, 18 U.S.C. § 1343. In pleading guilty to this count, Ready agreed to pay about $16,000 in restitution. He and the Government explicitly "reserve[d] the right to appeal any sentence imposed in this matter."

About six months later, Ready was charged in the District of Maryland with two additional counts of wire fraud, relating to a similar scheme to defraud the United States and several private companies. In an agreement with the United States Attorney's Office for that district, he pled guilty to both counts (the "Maryland plea agreement"). This agreement, analyzed below, contains the disputed waiver of Ready's right to appeal.

Paragraph 2 of the Maryland plea agreement (drafted as a letter to Ready's counsel) sets out the possible punishment:

> The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: Five years imprisonment per count and a fine of $250,000 per count, followed by a term of supervised release of three years. In addition, your client must pay $100 as a special assessment under 18 U.S.C. Section 3013, which will be due and should be paid at time of sentencing unless otherwise ordered by the Court. This Court may also order your client to make restitution pursuant to 18 U.S.C. Sections 3663 and 3664.

Ready agreed in paragraph 3B that the applicable offense level for sentencing under the Guidelines was 22. In paragraph 4, the Government expressly withheld any assurance that it would recommend a particular prison term within the Guidelines range, or that it would recommend a particular level of restitution:

> At your client's sentencing this Office will make any recommendation regarding the sentence in the guideline range it deems appropriate; and make any recommenda-

tion regarding restitution it deems appropriate.

Ready's Maryland plea agreement did not recite his acceptance of a specific restitution amount.

Paragraph 5 contains the waiver of Ready's right to appeal:

Your client and the United States knowingly and expressly waive all rights conferred by 18 U.S.C. Section 3742 to appeal whatever sentence is imposed, including any issues that relate to the establishment of the guideline range, reserving only the right to appeal from a sentence resulting from an adjusted base offense level of greater than twenty-three.[1]

Finally, paragraph 6 limits Ready's ability to withdraw from his guilty plea:

If the Court should impose *any sentence up to the maximum established by statute,* your client cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement.

(Emphasis added.)

Ready's two pleas were consolidated before Judge McAvoy in the Northern District of New York. Before accepting the pleas, the district court duly advised Ready that he was waiving a panoply of rights by pleading guilty, and ascertained from Ready that he understood "the consequences of pleading guilty." However, the court did not include the right to appeal in its list of the rights waived by Ready.

Later in the hearing, the court asked Ready's trial lawyer if he had "advised Mr. Ready of his rights, the nature of the charges and consequences of pleading guilty." Ready's counsel said that he had, and specified that "I have advised him that ... pursuant to the plea agreement in Maryland, he gives up his right to appeal any sentence that might be rendered here pursuant to that agreement."

At the end of the hearing, in a short colloquy with Ready's counsel, the court stated that Ready had not fully waived his right to appeal:

THE COURT: [Addressing Ready.] You have the right to appeal this sentence to certain limited circumstances—

READY'S LAWYER: I don't believe that's correct, according to the plea agreement, your Honor.

THE COURT: Ye[s]. The plea agreement talks about certain things with respect to the sentence. But if I impose an illegal sentence on him, he certainly would have the right to appeal that. So you should consult with your attorney before hitting him in the ribs again as to any appeal.

The court sentenced Ready based on an offense level of 22, as the Maryland plea agreement contemplated. Ready's criminal history category of VI yielded a Guidelines imprisonment range of 84 to 105 months, and a fine range of $7,500 to $75,000. He was sentenced to a total of 100 months in prison. No fine was imposed "because of the defendant's inability to pay."

The court imposed a restitution penalty of approximately $308,000. Of that, $16,000 was the amount agreed to in the New York plea agreement, and $292,000 was the amount attributed to the Maryland indictment. The court drew the $292,000 figure from the presentencing report, which listed the losses suffered by five corporate victims of Ready's scheme. Ready claims that the court failed to "consider" his "financial resources ... and earning ability" before imposing restitution, as required by 18 U.S.C. § 3664(a). The restitution penalty, he says, was therefore imposed illegally. But if Ready completely waived his right to appeal the restitution imposed pursuant to the Maryland plea agreement, then he cannot contest the legality of the $292,000 portion of the restitution penalty.

## II

■ A criminal defendant has no constitutional right to an appeal. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983); *United States v. Matista,* 932 F.2d 1055, 1056 (2d Cir.1991). *But*

1. The reference to an offense level of 23 appears to be a mistake, since the Government had agreed in paragraph 3B that the proper offense level was 22.

*see Honda Motor Co. v. Oberg,* —— U.S. ——, ——, 114 S.Ct. 2331, 2341, 129 L.Ed.2d 336 (1994) (failure to provide judicial review of jury's punitive damages award violates defendant's due process rights). Once a system of appellate courts is put into place, however, a criminal defendant's ability to appeal may not be unduly burdened. *North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794, 802, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865 (1989); *Griffin v. Illinois,* 351 U.S. 12, 18–19, 76 S.Ct. 585, 590–91, 100 L.Ed. 891 (1956).

■ The right to appeal a criminal conviction and sentence is statutory. Prior to the passage of the Sentencing Reform Act of 1984 (the "1984 Act"), which brought us the Sentencing Guidelines, criminal appeals were taken pursuant to 28 U.S.C. § 1291. That statute simply allows appellate courts to hear appeals from "all final decisions of the district courts." The right to appeal a sentence under § 1291 was limited to sentences that were imposed above statutory limits, that were the result of material misinformation, or that were based on a constitutionally impermissible factor. *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972); *United States v. Colon,* 884 F.2d 1550, 1552 (2d Cir.), *cert. denied,* 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989).

■ The 1984 Act "expanded appellate review." *Colon,* 884 F.2d at 1552. A new statutory section (which we quote in its current form) provided not just for review of a sentence "imposed in violation of law," 18 U.S.C. § 3742(a)(1), but also for review of a sentence "imposed as a result of an incorrect application of the sentencing guidelines," *id.* § 3742(a)(2), a sentence "greater than the sentence specified in the applicable guideline range," *id.* § 3742(a)(3), or a sentence "plainly unreasonable" when "imposed for an offense for which there is no sentencing guideline," *id.* § 3742(a)(4). Entry into a plea agreement that includes a specific sentence forecloses only the last two grounds of appeal (as long as the actual sentence falls within the sentence envisioned by the agreement),

but does not foreclose an appeal based on an illegal sentence or one based on an incorrect application of the Guidelines. *Id.* § 3742(c).

■ Along with the other circuits that have considered the question, we have held that a defendant's right to appeal his sentence may be waived in a plea agreement. *See Yemitan,* 70 F.3d at 748; *United States v. Salcido–Contreras,* 990 F.2d 51, 51 (2d Cir.) (per curiam), *cert. denied,* 509 U.S. 931, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993); *see also United States v. Schmidt,* 47 F.3d 188, 192 (7th Cir.1995) ("declin[ing] to exercise" the court's "jurisdiction to determine the merits of the defendants' appeal" because of valid waiver of right to appeal); *United States v. Bushert,* 997 F.2d 1343, 1350 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 652, 130 L.Ed.2d 556 (1994); *United States v. Melancon,* 972 F.2d 566, 567 (5th Cir.1992); *United States v. Rutan,* 956 F.2d 827, 829 (8th Cir.1992); *United States v. Navarro–Botello,* 912 F.2d 318, 322 (9th Cir. 1990), *cert. denied,* 503 U.S. 942, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992); *United States v. Wiggins,* 905 F.2d 51, 53 (4th Cir.1990).

But no circuit has held that these contractual waivers are enforceable on a basis that is unlimited and unexamined. *See, e.g., Yemitan,* 70 F.3d at 748 ("We do not hold that the waiver of appellate rights forecloses appeal in every circumstance."); *United States v. Jacobson,* 15 F.3d 19, 23 (2d Cir.1994) ("[A] waiver of the right not to be sentenced on the basis of a constitutionally impermissible factor may be invalid...."); *United States v. Henderson,* 72 F.3d 463, 465 (5th Cir.1995) (defendant cannot validly waive right to appeal from a denial of the claim that the plea agreement was entered into with ineffective assistance of counsel).

■ In deciding whether to enforce an individual's waiver of a right, courts ask whether the right implicates institutional and societal values that transcend the individual's interests. Recently, the Supreme Court has held that, even as to evidentiary rulings, a defendant may be deemed incapable of waiving a right that has an overriding impact on public interests:

[T]here may be some evidentiary provisions that are so fundamental to the relia-

bility of the fact-finding process that they may never be waived without irreparably discredit[ing] the federal courts.

*United States v. Mezzanatto,* —— U.S. ——, ——, 115 S.Ct. 797, 803, 130 L.Ed.2d 697 (1995) (internal quotation marks omitted) (upholding defendant's waiver of the right to exclude from evidence his statements during plea negotiations). In support, the Court parenthetically quoted Judge Posner's zoological example:

No doubt there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept.

*Id.* (quoting *United States v. Josefik,* 753 F.2d 585, 588 (7th Cir.), *cert. denied,* 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 481 (1985)). Along these lines, the Court in *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), concluded that a criminal defendant's right to have a lawyer free of conflicts of interest is not a waivable right, in part because such a conflict " 'constitutes a breach of professional ethics and invites disrespect for the integrity of the court.' " *Id.* at 162, 108 S.Ct. at 1699 (quoting *United States v. Dolan,* 570 F.2d 1177, 1184 (3d Cir.1978)); *see also Tony & Susan Alamo Found. v. Secretary of Labor,* 471 U.S. 290, 302, 105 S.Ct. 1953, 1962, 85 L.Ed.2d 278 (1985) (employees may not waive Fair Labor Standards Act protections; otherwise, non-waiving employees might be subject to downward wage pressures, and employers might use their "superior bargaining power to coerce" employees into waiving these protections).

■ As for the right to appeal, we have recognized that appellate review under the Guidelines, important as it is for individual defendants, also serves an important public interest in avoiding the sentencing disparities that were seen to be a great problem with the pre-Guidelines system. *See Colon,* 884 F.2d at 1555 ("[A]ppellate review of sentences outside the Guidelines is essential because, absent such review, enforcement of the Guidelines would be left exclusively to the judgment of each sentencing court, and the [congressional] purpose of achieving a degree of uniformity might be thwarted."); *see also* S.Rep. No. 225, 98th Cong., 2d Sess. 151 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3334 (right to appellate review "essential to assure that the guidelines are applied properly and to provide case law development of the appropriate reasons for sentencing outside the guidelines"). And allowing a defendant to waive appeal of any and every sentence "imposed in violation of law" would "invite[ ] disrespect for the integrity of the court[s]," *Wheat,* 486 U.S. at 162, 108 S.Ct. at 1699 and "discredit" the legitimacy of the sentencing process. *Mezzanatto,* —— U.S. at ——, 115 S.Ct. at 803.

■ Accordingly, we must scrutinize waivers closely and apply them narrowly. To this end, we use two familiar mechanisms. First, we assure that the waiver of this important right is knowing and voluntary. *See United States v. Robinson,* 8 F.3d 418, 421 (7th Cir.1993); *see also Yemitan,* 70 F.3d at 747 (defendant conceded waiver was knowing and voluntary). Second, we construe the terms of a plea agreement narrowly, using applicable principles of contract law. *See Yemitan,* 70 F.3d at 747. On both grounds, we hold that Ready did not waive his right to take this appeal.

## III

■ In plea agreements, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Every circuit to consider the issue has concluded that waivers of the right to appeal a sentence, like waivers of constitutional rights, are invalid unless they are voluntary and knowing.[2] *Schmidt,* 47 F.3d at 190 (7th

---

2. Though this Court has never ruled on the issue explicitly, statements in our past decisions make it clear that we would not accept an involuntary or "unknowing" waiver of the right to appeal. *See Yemitan,* 70 F.3d at 747 ("It is undisputed that [the defendant] entered into his plea agree-

Cir.); *Bushert,* 997 F.2d at 1350–51 (11th Cir.); *Melancon,* 972 F.2d 566, 567 (5th Cir. 1992); *United States v. Marin,* 961 F.2d 493, 496 (4th Cir.1992); *Rutan,* 956 F.2d at 829 (8th Cir.); *Navarro–Botello,* 912 F.2d at 321–22 (9th Cir.). Courts have stressed that a waiver is only knowing or "informed" if the defendant "fully understood the consequences of the waiver." *Rutan,* 956 F.2d at 830; *United States v. Baty,* 980 F.2d 977, 979 (5th Cir.1992), *cert. denied,* 508 U.S. 956, 113 S.Ct. 2457, 124 L.Ed.2d 672 (1993).

A majority of circuits that have addressed this issue have either ruled or intimated that the district court should specifically flag the defendant's waiver of the right to appeal at the Rule 11 plea agreement hearing.[3] We agree that a waiver of the right to appeal should only be enforced by an appellate court if the record "clearly demonstrates" that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary. *See Schmidt,* 47 F.3d at 190 (courts should uphold waiver "only if the record clearly demonstrates that the defendant knowingly and voluntarily entered into the plea agreement" and hence waived his right to appeal).

After reviewing the transcript of the Rule 11 hearing, we conclude that Ready did not knowingly waive his right to appeal a restitution order that is imposed in violation of 18 U.S.C. § 3664(a). At the hearing, the district court explained to Ready that it would soon be "advis[ing] you of your rights as to whether or not you are pleading guilty freely and voluntarily with an understanding of the charges made against you and the consequences of pleading guilty." When the court enumerated the rights that Ready was waiving, however, it did not mention the right to appeal or explain the consequences of waiving this right. Ready's lawyer had advised Ready that "he gives up his right to appeal any sentence that might be rendered here pursuant to [the plea] agreement," and so advised the court. In response, the court explained that it understood the waiver to be a limited one: "But if I impose an illegal sentence on him, he certainly would have the right to appeal that." Since the court stated that the waiver only applied to legally imposed sentences, it would have been entirely reasonable for Ready to believe (with the judge) that he was not waiving his right to appeal a sentence that was imposed illegally.

ment knowingly and voluntarily."); *United States v. Stevens,* 66 F.3d 431, 437 (2d Cir.1995) ("As the record on appeal affords no basis to know whether the defendant knowingly agreed to the [post-trial sentencing] Stipulation, much less the waiver of appeal contained in it, we will remand to the district court."); *United States v. Salcido–Contreras,* 990 F.2d 51, 51 (2d Cir.1993) (per curiam) ("We have held that knowing and voluntary waivers of a defendant's right to appeal a sentence within an agreed Guidelines range are enforceable; *United States v. Rivera,* 971 F.2d 876, 896 (2d Cir.1992)."), *cert. denied,* 509 U.S. 931, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993).

**3.** *Compare Schmidt,* 47 F.3d at 191 ("These two excerpts from the guilty plea hearing clearly reveal that the waiver of the right to appeal was knowingly, voluntarily, and intelligently made."); *Bushert,* 997 F.2d at 1351 ("[I]n most circumstances, for a sentence appeal waiver to be knowing and voluntary, the district court must have specifically discussed the sentence appeal waiver with the defendant during the Rule 11 hearing."); *Marin,* 961 F.2d at 496 ("[A] waiver is not knowingly or voluntarily made if the district court fails to specifically question the defendant concerning the waiver provision of the plea agreement during the Rule 11 colloquy and the record indicates that the defendant did not other-

wise understand the full significance of the waiver."); *Rutan,* 956 F.2d at 830 ("Review of the transcript of the [Rule 11] hearing ... shows that [the defendant] fully understood the consequences of the waiver."); *with United States v. DeSantiago–Martinez,* 38 F.3d 394, 395 (9th Cir. 1992) ("[A] Rule 11 colloquy on the waiver of the right to appeal is not a prerequisite to a finding that the waiver is valid; rather, a finding that the waiver is knowing and voluntary is sufficient."), *cert. denied,* —— U.S. ——, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995); *United States v. Portillo,* 18 F.3d 290, 293 (5th Cir.) ("[W]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal."), *cert. denied,* —— U.S. ——, 115 S.Ct. 244, 130 L.Ed.2d 166 (1994). Recently, the Fifth Circuit, which does not require a specific discussion at the Rule 11 hearing on the appeal waiver issue, held that the waiver of the right to appeal does not preclude an appeal based on ineffective assistance of counsel, presumably because a waiver made without competent legal advice could not be considered knowing. *See United States v. Henderson,* 72 F.3d 463, 465 (5th Cir.1995).

This understanding is consistent with the comment of Ready's counsel that he could not appeal a sentence imposed "pursuant to [the plea] agreement," since it would have been reasonable for Ready to believe that his plea agreement, written by Government lawyers and scrutinized by his own lawyer, did not authorize an illegally imposed sentence.

■ As in *Baty*, then, "there was no satisfactory explanation to [Ready that] the consequences of [his] waiver of [his] right to appeal" included the waiver of an illegally imposed sentence. *See* 980 F.2d at 979. We agree with the *Baty* court that:

[A] defendant's waiver of her right to appeal deserves, and, indeed, requires the special attention of the district court. When a defendant waives her right to appeal, she gives up the very valuable right to correct a district court's unknown and unannounced sentence. . . . It is up to the district court to insure that the defendant fully understands her right to appeal and the consequences of waiving that right.

*Id.* Here, the record does not instill confidence that Ready understood his waiver to include the waiver of his right to appeal a restitution penalty imposed in violation of 18 U.S.C § 3664(a). We therefore hold that his waiver was not knowing, for the purposes of this appeal.

## IV

■ We construe a criminal defendant's waiver of appellate rights narrowly. *See supra* section II. Applying that rule to this case, we conclude that the waiver in Ready's Maryland plea agreement did not include his right to appeal an illegally imposed restitution penalty.

■ As we said in *Yemitan*, "[p]lea agreements are construed according to contract law principles." 70 F.3d at 747. But of course, different types of contracts are subjected to different interpretive rules and background understandings. *See, e.g., Farnsworth on Contracts* § 4.26 at 313–15 (2d ed. 1990) (in interpreting "standardized agreements," courts use several "judicial techniques" which sometimes have the effect of relieving the non-drafting party of its con-

tractual obligations). "Plea agreements . . . are unique contracts 'in which special due process concerns for fairness and the adequacy of procedural safeguards obtain.'" *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir.1992) (quoting *United States v. Ataya*, 864 F.2d 1324, 1329 (7th Cir.1988)); *see also United States v. Herrera*, 928 F.2d 769, 773 (6th Cir.1991) ("Although the plea agreement is contractual in nature, it is by no means an ordinary contract."); *United States v. Giorgi*, 840 F.2d 1022, 1026 (1st Cir.1988) ("unique nature of a plea agreement"); Frank H. Easterbrook, *Plea Bargaining as Compromise*, 101 Yale L.J. 1969, 1974–75 (1992) ("The analogy between plea bargains and contracts is far from perfect. . . . Plea bargains are preferable to mandatory litigation—not because the analogy to contract is overpowering, but because compromise is better than conflict."); Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1930 (1992).

■ As the Fourth Circuit has recognized, in interpreting plea agreements,

courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts. But the courts have recognized that those rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government.

*United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986) (citations and internal quotation marks omitted).

■ Several rules of interpretation, consistent with general contract law principles,

are suited to the delicate private and public interests that are implicated in plea agreements. First, courts construe plea agreements strictly against the Government. This is done for a variety of reasons, including the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power. *See Carnine,* 974 F.2d at 928; *Giorgi,* 840 F.2d at 1026; *United States v. De la Fuente,* 8 F.3d 1333, 1338 (9th Cir.1993); *see also Farnsworth on Contracts,* § 7.11 at 518 ("common" rule that terms are construed against drafter "often operates against a party that is at a distinct advantage in bargaining ... [but] may be invoked even if the parties bargained as equals.").

■ Second, we construe the agreement against a general background understanding of legality. That is, we presume that both parties to the plea agreements contemplated that all promises made were legal, and that the non-contracting "party" who implements the agreement (the district judge) will act legally in executing the agreement. *See Walsh v. Schlecht,* 429 U.S. 401, 408, 97 S.Ct. 679, 685, 50 L.Ed.2d 641 (1977) ("Since a general rule of construction presumes the legality and enforceability of contracts, 6A A. Corbin, Contracts §§ 1499, 1533 (1962), ambiguously worded contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable."); *Northwest Envtl. Advocates v. City of Portland,* 56 F.3d 979, 984 (9th Cir.1995) ("Courts should, if possible, interpret a contract so that its terms will not be illegal."); *Central States v. Joe McClelland, Inc.,* 23 F.3d 1256, 1258 (7th Cir.1994) ("Terms that are lawful as written may not be given an illegal spin as part of an effort to curtail the obligation they create."); *see also In re Leasing Consultants Inc.,* 592 F.2d 103, 110 (2d Cir.1979) ("[T]he *in pari delicto* doctrine ... denies judicial relief ... to parties to illegal contracts.... [T]his principle is based not on solicitude for the defendant, but on concern for the public welfare ...." (citations omitted)).

■ Finally, as we pointed out in *Yemitan,* courts may apply general fairness principles to invalidate particular terms of a plea agreement. 70 F.3d at 748 ("Plea agreements are subject to the public policy constraints that bear upon the enforcement of other kinds of contracts."); *see* Restatement (Second) of Contracts, § 178 (1981) ("A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."); U.C.C. § 2–302(1) (1994) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract," or may sever or limit the unconscionable clause.).

We apply these principles to Ready's plea agreement. When construed strictly against the Government and against a background presumption of legality, the waiver language does not allow the inference that the parties intended it to preclude the appeal of an illegally imposed restitution penalty. First, paragraph 2 of the agreement explicitly applies the background presumption of legality to Ready's restitution penalty: "Th[e] Court may also order your client to make restitution *pursuant to 18 U.S.C. Sections 3663 and 3664.*" (Emphasis added.) Though Ready's waiver of his appellate rights in paragraph 5 is admittedly broad (waiver of right to appeal "whatever sentence is imposed"), it does not distinctly negate paragraph 2's statement that restitution will be imposed in accordance with the restitution statute. There is thus an ambiguity (at the least) as to the parties' intent with regard to restitution penalties imposed illegally. Construing this ambiguity strictly against the Government, we must presume that on the issue of restitution, the parties intended the phrase, "whatever sentence is imposed," to mean "whatever sentence is imposed by law."

Second, there is an ambiguity in paragraph 5 as to whether the term "sentence" includes the restitution penalty. Paragraph 5 states:

[The defendant] and the United States knowingly and expressly waive all rights conferred by 18 U.S.C. Section 3742 to appeal *whatever sentence is imposed*, including any issues that relate to the establishment of the guideline range, reserving only the right to appeal from *a sentence resulting from* an adjusted base offense level of greater than twenty-three.

(Emphasis added.) The word "sentence" is thus used twice, once in the waiver and then in the reservation. It is express that the "sentence" referenced in the reservation is the sentence that "result[s] from an adjusted base offense level," which would include the prison sentence and the fine. But the word "sentence," as used in the reservation, would not include restitution, because restitution penalties are not linked in any way with Guidelines base offense levels. And there is no indication that the word "sentence" is intended to mean a different thing when used earlier in the paragraph (in the phrase "whatever sentence is imposed"). Nor is there anything in the plea agreement to suggest that the defendant agreed not to appeal "whatever *restitution* is imposed," including, for instance, an unlimited restitution penalty (which might in any case be an unconscionable agreement). It is thus ambiguous whether paragraph 5's reference to "whatever sentence is imposed" includes the restitution penalty imposed. Once again, this ambiguity must be construed strictly against the Government.

The use of the term "sentence" in paragraph 4 of the agreement confirms the impression that the term was not intended to include restitution. That provision states that the Government

will make any recommendation *regarding the sentence* in the guideline range it deems appropriate; and make any recommendation *regarding restitution* it deems appropriate.

(Emphasis added.) Under a straightforward reading of this passage, the "sentence" is an idea separate from "restitution." Paragraph 6 adds more support:

If the Court should impose *any sentence up to the maximum established by statute*, [the defendant] cannot, for that reason

alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement.

(Emphasis added.) Prison terms and fines are frequently limited by statutes, but restitution amounts are not. The term "any sentence" in paragraph 6 thus seems to exclude restitution, or any imposition that is not subject to a statutory maximum. For all of these reasons, we conclude that the waiver of Ready's right to appeal his "sentence" did not include a waiver of his right to appeal his restitution penalty.

We hold that Ready did not waive the right to bring this appeal. The merits of that appeal raise no new issues, and are resolved by summary order issued on the same day as this opinion.