UNITED STATES of America,
Plaintiff–Appellee,

v.

Willie Karl MORGAN, aka Willis
Morgan, Defendant–
Appellant.

No. 01–2088.

United States Court of Appeals,
Tenth Circuit.

July 23, 2002.

Before LUCERO, ANDERSON and
BALDOCK, Circuit Judges.

## ORDER AND JUDGMENT*

STEPHEN H. ANDERSON, Circuit
Judge.

Defendant and appellant Willie Karl
Morgan was indicted for aggravated sexual
abuse of a child, in violation of 18 U.S.C.
§§ 1153, 2241(c) and 2246(2)(D). He pled
guilty pursuant to a written plea agree-
ment, which included a provision waiving
his appellate rights. He was sentenced to

---

* This order and judgment is not binding prece-
dent, except under the doctrines of law of the
case, res judicata, and collateral estoppel.
The court generally disfavors the citation of
orders and judgments; nevertheless, an order
and judgment may be cited under the terms
and conditions of 10th Cir. R. 36.3.

116 months imprisonment, followed by a five-year period of supervised release. Despite his waiver of his appellate rights, he endeavors to appeal two specific conditions of his supervised release. We affirm.

## BACKGROUND

In addition to requiring compliance with thirteen standard conditions, Morgan's term of supervised release included an additional eight special conditions. Two of those special conditions obligated Morgan to:

> participate in sex offender treatment as directed by the probation officer and submit to a risk assessment including physiological testing, which may include but is not limited to a clinical polygraph, or other specific sex offender tests[; and]

> not have direct or unsupervised contact with children under the age of eighteen (18) without prior written permission of the probation officer and ... report within eight (8) hours to the probation office any unauthorized contact with children.

J. in a Criminal Case at 4, R. Vol. I, Doc. 27. Morgan argues that requiring him to report a violation of a special condition of supervised release violates his Fifth Amendment right not to incriminate himself, as well as the Sentencing Guidelines and applicable federal sentencing statutes. He also argues that compelling him to submit to certain physiological testing, in particular a penile plethysmograph, violates his First and Fourth Amendment rights "without being reasonably related to public protection or defendant rehabilitation." Morgan's Br. in Chief at 12.

The government responds: (1) we lack jurisdiction over this appeal because Morgan waived his statutory right to appeal; (2) because Morgan will not be on supervised release until his current 116 month prison sentence is complete, and he has therefore not yet been compelled to comply with the supervised release terms he challenges, the issues in this case are not ripe for review; and (3) in any event, the challenged supervised release conditions do not violate Morgan's Fifth, First or Fourth Amendment rights.

## I. Waiver of Right to Appeal and Ripeness

### A. Waiver

We first address the government's motion to dismiss this appeal for lack of jurisdiction, on the ground that Morgan's written waiver of his appellate rights in the plea agreement bars this appeal. The plea agreement contained the following section:

### WAIVER OF APPEAL RIGHTS

10. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.

a. Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

b. Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the guideline range applicable to the statutes of conviction as determined by the court after resolution of any objections by either party to the presentence report to be prepared in this case, and the defendant specifically agrees not to appeal the determination of the court in resolving any

contested sentencing factor. In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, that the court may depart upwards from the applicable sentencing guideline range as determined by the court.

Plea Agreement at 5, R. Vol. I, Doc. 21 at 5.

"A defendant's knowing and voluntary waiver of the statutory right to appeal his sentence is generally enforceable." *United States v. Elliott,* 264 F.3d 1171, 1173 (10th Cir.2001) (quotation omitted). However, because even defendants who choose to waive their appellate rights do not thereby "subject [themselves] to being sentenced entirely at the whim of the district court," *id.* (quotation omitted):

> [a]ppellate waivers are subject to certain exceptions, including where the district court relied on an impermissible factor such as race, where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, where the sentence exceeds the statutory maximum, or where the waiver is otherwise unlawful.

*Id.* We have also recognized that a valid waiver must be voluntary and knowing. *See United States v. Cockerham,* 237 F.3d 1179, 1182 (10th Cir.2001) ("[A]greements waiving the right to appeal are subject to certain exceptions, including where the agreement was involuntary or unknowing."), *cert. denied,* — U.S. —, 122 S.Ct. 821, 151 L.Ed.2d 703 (2002). Additionally, Fed.R.Crim.P. 11(c)(6) provides that the district court must determine that the defendant understands "the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence." [1]

Morgan argues that the term "sentence" in the plea agreement "refers to the duration of imprisonment and supervised release, both of which are linked to the applicable guideline range. Because special conditions of supervision are not linked with the guideline ranges, they are not included within the meaning of the term 'sentence,' and this appeal is not covered by the language of the waiver." Resp. to Gov't's Mot. to Dismiss at 10. Morgan also argues, more broadly, that, even if the waiver in the plea agreement barred his appeal of the specific conditions of supervised release, such a waiver provision "is contrary to public policy, fundamentally unfair, unconscionable, and unenforceable." *Id.* at 11.

We first reject Morgan's broad attack on the validity and enforceability of appellate waivers. As our cases cited above indicate, we have enforced such waivers, with certain exceptions. Indeed, we have acknowledged that our circuit has been "more deferential to ... broad waiver-of-appeal provisions" in plea agreements than some other courts have been. *United States v. Black,* 201 F.3d 1296, 1301 n. 3 (10th Cir.2000). Morgan does not argue that the district court "relied on an impermissible factor such as race" nor does he argue that "ineffective assistance of counsel in connection with the negotiation of the waiver renders it invalid." *Elliott,* 264 F.3d at 1173. He does argue, however, that he did not "knowingly and voluntarily waive[ ] the right to appeal the legality or constitutionality of the special conditions of supervision imposed in this case." Resp. to Gov't's Mot. to Dismiss at 20. Thus, aside from his broad attack on appellate waivers, which our case law clearly rejects, Morgan does not attempt to appeal the length of his term of imprisonment and

---

1. Rule 11(c)(6) became effective December 1, 1999, and is therefore applicable to Morgan's change-of-plea proceedings, which occurred on November 8, 2000.

supervised release, or any other aspect of his sentence, except for the two specific conditions of supervised release.

There is sparse case law on the issue of whether an otherwise lawful waiver of the right to appeal a sentence includes a waiver of the right to appeal conditions of supervised release which are first announced and imposed at sentencing. What case law there is primarily evidences a reluctance by courts to address the issue. The Ninth Circuit in *United States v. Bolinger*, 940 F.2d 478 (9th Cir.1991), upheld the validity of a waiver of the right to appeal a sentence, but, without discussion, addressed the merits of the defendant's challenge to a special condition of supervised release. *Id.* at 480; *see also United States v. Rowen*, No. 91–10588, 1993 WL 45308 at *2 (9th Cir. Feb.23, 1993) (same). In *United States v. Ready*, 82 F.3d 551 (2d Cir.1996), after noting that it must "construe a criminal defendant's waiver of appellate rights narrowly," *id.* at 558, the court concluded that "the waiver of [defendant's] right to appeal his 'sentence' did not include a waiver of his right to appeal his restitution penalty." *Id.* at 560. Several other courts have specifically avoided addressing the issue. *See United States v. JoDon*, 19 Fed.Appx. 443, No. 01–1449, 2001 WL 1098100 at *1 (8th Cir. Sept.20, 2001) (declining to decide whether waiver of right to appeal sentence barred appeal of special condition of supervised release and proceeding to defendant's claim on the merits); *United States v. Bahe*, 201 F.3d 1124, 1126 n. 2 (9th Cir.2000) (declining to reach the issue of whether a waiver of the right to appeal the sentence barred an appeal of an allegedly illegal condition of supervised release where "[t]he question whether the waiver of appeal provision bars this appeal thus hinge[d] on [the] determination whether the district court had authority to impose community confinement as a condition of supervised re-

lease"); *United States v. Arellano–Peralta*, No. 99–50372, 1999 WL 436198 at *1 n. 3 (9th Cir. June 16, 1999) ("Because we conclude that there was ample evidence in the record to support the supervised release conditions, we do not reach the government's contention that Arellano–Peralta expressly waived his right to appeal the supervised release conditions."); *United States v. Jackson*, 189 F.3d 820, 822 n. 1 (9th Cir.1999) (declining to address whether a waiver of the right to appeal the sentence barred an appeal of a condition of supervised release where "[b]oth the merits of the appeal and the applicability of the waiver to the ... condition hinge[d]" on the court's conclusion that the district court correctly imposed the special condition); *United States v. Cupit*, 169 F.3d 536, 539 (8th Cir.1999) (concluding that it was unclear whether waiver encompassed appeal of restitution, declining to address the waiver of restitution issue and, instead, addressing the merits of the restitution issue). *But see, United States v. Volungus*, 8 Fed.Appx. 555, No. 99–5875, 2001 WL 493375 at *1 (6th Cir. May 4, 2001) (upholding explicit waiver at sentencing of appeal of special condition of supervised release).

Given the ambiguity concerning the scope of Morgan's waiver, and the reluctance of most courts to confront the issue of whether such a waiver properly encompasses the waiver of the right to appeal special conditions of supervised release, we decline to resolve Morgan's appeal on that basis. *Cf. United States v. Cunningham*, 292 F.3d 115, 117 (2d Cir.2002) (reading plea agreement "narrowly" and "construing it strictly against the Government" to conclude that agreement waiving right to appeal but not mentioning supervised release did not waive right to appeal length of supervised release) (quotation omitted). We accordingly turn now to the other pro-

cedural challenge the government raises to this appeal-i.e., its ripeness for review.

### B. Ripeness

█ The government argues this case is not ripe for review because Morgan's challenges to the conditions of supervised release address conduct which will occur, if it occurs at all, in the future, following the completion of his 116 month prison sentence. It argues it is completely speculative whether a probation officer will seek to enforce the terms of the supervised release, and what consequence might flow from a violation of those terms. Morgan responds that our recent decision in *United States v. White*, 244 F.3d 1199 (10th Cir.2001) resolves this issue and requires a conclusion that the issue is ripe. We agree with the government, however, that there are serious ripeness questions about Morgan's challenge.[2] Even assuming *arguendo* that the matter is ripe for review, we nonetheless reject Morgan's challenge on its merits.

### II. Merits of his Challenge to the Conditions of Supervised Release

█ "We review the district court's application of the guidelines for errors of law, giving due deference to its application of the guidelines to the facts." *United States v. Zanghi*, 209 F.3d 1201, 1203 (10th Cir. 2000) (quotation omitted). We review "[c]onditions of supervised release, as ordered by the district court ... for abuse of discretion." *Id.* (quotation omitted).

As indicated, Morgan argues that requiring him to report a violation of a special condition of supervised release (the prohibition against unsupervised contact with children under 18) violates his Fifth Amendment right not to incriminate himself, as well as 18 U.S.C. § 3583(d)(2) and U.S.S.G. § 5D1.3(b) because it "unnecessarily deprives [him] of liberty without being reasonably related to the goals of public protection and defendant rehabilitation." Morgan's Br. in Chief at 9.[3]

---

2. In *White*, we applied the ripeness analysis in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18° L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), and *United States v. Loy*, 237 F.3d 251 (3d Cir.2001), to conclude that a defendant's challenge to three conditions of supervised release, including the condition that the defendant submit to physiological testing, was ripe for our review. *White* is distinguishable in certain respects from this case, and the circumstances which made a challenge to supervised release conditions ripe in both *White* and *Loy* are not all present in this case.

First, the defendant in *White* had already served his custodial sentence and was appealing from a second violation of supervised release. As we noted in concluding that he had established hardship, Mr. White was in imminent danger of reincarceration were he to violate any of the terms of his supervised release. By contrast, Morgan has a number of years of his custodial sentence left before he even is on supervised release. Additionally, in both *Loy* and *White*, there

was uncertainty about the scope of the particular special conditions, and what conduct they prohibited, making compliance with them difficult and unpredictable for the defendants. By contrast, Morgan makes no vagueness challenge to his conditions; he simply argues that they will violate his constitutional rights. Finally, given the length of time before Morgan will be on supervised release, coupled with the fact that we have no idea what kind of physiological testing might be utilized, nor do we know the consequence to Morgan of, for example, his failure to report contact with a minor within eight hours thereof, any opinion we render about the validity of Morgan's conditions of supervised release would be completely speculative and advisory, and based upon a wholly uncertain set of possible facts and scenarios.

3. Section 5D1.3 of the Guidelines lists seven mandatory conditions of supervised release, fifteen standard conditions, and eleven special conditions. The Guidelines further permit the imposition of other, non-listed conditions:

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has held that the privilege applies to interviews with probation officers. *See Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). "However, 'the general obligation to appear and answer questions truthfully' does not amount to compulsion." *United States v. Davis*, 242 F.3d 49, 51 (1st Cir.2001) (quoting *Murphy*, 465 U.S. at 427). Rather, the probationer's answers are only "compelled within the meaning of the Fifth Amendment [if] the witness is required to answer over his valid claim of the privilege." *Murphy*, 465 U.S. at 427; *see also Davis*, 242 F.3d at 51; *Ainsworth v. Risley*, 244 F.3d 209, 217 (1st Cir.2001) (noting that the Court in *Murphy* "agreed that the state could not directly link invocation of the Fifth Amendment privilege to revocation of probation"), *petition for cert. filed*, 70 U.S.L.W. 3317 (U.S. July 28, 2001) (No. 01–64). In this case, as in *Davis*, "the questioning has not yet happened." *Davis*, 242 F.3d at 51. Accordingly, " '[c]ompulsion ... turns on what the government would do in such a case, rather than on what in fact it has done.' " *Id.* (quoting *Nat'l Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 292 (D.C.Cir. 1993)).

The Supreme Court has stated that its "cases indicate ... that a state may validly insist on answers to even incriminating

questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding." *Murphy*, 465 U.S. at 435 n. 7. Thus, "nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation or from using the probation's silence as 'one of a number of factors to be considered by a finder of fact' in deciding whether other conditions of probation have been violated." *Id.*

In this case, while on supervised release, Morgan is obligated to report any violation of a specific condition of his supervised release (the condition specifying that he not have unauthorized contact with children under the age of 18). In reality, this is simply an example of the state exercising its right to "require a probationer to appear and discuss matters that affect his probationary status." *Murphy*, 465 U.S. at 435. As the government asserts, the conditions of supervised release at issue "are to insure [Morgan's] proper supervision." Appellee's Answer Br. at 17. Thus, the condition, as it now stands, does not violate Morgan's Fifth Amendment rights. *Cf. McKune v. Lile*, 536 U.S. ——, ——, 122 S.Ct. 2017, 2030, 153 L.Ed.2d 47 (2002) (holding that the negative consequences to prisoner for failure to participate in sex offender rehabilitation program requiring admission of all prior sexual offenses did

---

to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed education or vocational training, medical care, or other correctional treat-

ment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission. U.S.S.G. § 5D1.3(b); *see also* 18 U.S.C. § 3553(a) (listing factors to consider in sentencing); 18 U.S.C. § 3583(d) (listing requirements and considerations for conditions of supervised release).

not constitute compulsion under the Fifth Amendment).[4]

We do not suggest that Morgan may never assert a Fifth Amendment right. As the Court in *Murphy* stated, "we are hesitant to read into the truthfulness requirement an additional obligation that [probationer] refrain from raising legitimate objections to furnishing information that might lead to his conviction for another crime." *Murphy,* 465 U.S. at 437. If at some time in the future, the court revokes Morgan's supervised release "as a penalty for his legitimate exercise of his Fifth Amendment privilege, he remains free to challenge that action at the time it occurs. That eventuality, however, has not yet occurred (and may never occur)." *Davis,* 242 F.3d at 52. We therefore conclude that the special condition of supervised release requiring the reporting of unauthorized contact with minors is valid. We also conclude that this special condition is reasonably related to the goals of public protection and Morgan's rehabilitation, and does not deprive him of any liberty interest.

■ Morgan next challenges the district court's imposition of the special condition requiring him to submit to certain physiological testing, in particular a penile plethysmograph, as violating his First and Fourth Amendment rights, as well as the statutory and Guidelines requirement that any deprivation of liberty be no greater than is necessary to advance the goals of protecting the public and facilitating Morgan's rehabilitation. We reject this argument.

As the Supreme Court very recently stated, "[s]ex offenders are a serious threat in this Nation." *McKune,* 536 U.S. at ——, 122 S.Ct. at 2024. "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.... States thus have a vital interest in rehabilitating convicted sex offenders." *Id.* In *McKune,* a prisoner refused to participate in a sexual offender rehabilitation program, which required as part of its treatment protocol the revelation of all prior sexual offenses. Refusal to participate resulted in a reduction in the prisoner's visitation rights, ability to earn money, work opportunities, and other privileges, as well as his transfer to a maximum security unit "where his movement would be more limited, he would be moved from a two-person to a four-person cell, and he would be in a potentially more dangerous environment." *Id.* at 2024. A plurality of the Supreme Court held that, given the "vital penological purpose" served by the rehabilitation program, *id.* at 2022 the consequence of refusing to participate in the rehabilitation program did not violate the prisoner's right to be free of compelled self-incrimination under the Fifth Amendment. *Id.* at 2032.

*McKune* does not address a Fourth or First Amendment argument. However, we conclude that the plurality's approval of a sex offender rehabilitation program which involves the kind of "burdens" discussed above compels us to find no constitutional violation in requiring Morgan to

---

4. *McKune* provides additional support for our finding of no Fifth Amendment violation in this case, in that the penalty in *McKune* for failure to participate in the program was automatic. Despite that, a plurality of the Supreme Court found no compulsion under the Fifth Amendment. Here, we actually do not know what consequence might flow from a

finding that Morgan violated a term of his supervised release. While he argues he "would expose him[self] to serious consequences for violation of a condition of supervision," Morgan's Reply Br. at 8, we do not now know what consequence would actually occur.

participate in a rehabilitative program involving physiological testing, perhaps including a penile plethysmograph. Of course, our unwillingness to find a constitutional violation is further heightened by the fact that, at this point, it is entirely speculative and hypothetical that Morgan will ever be required to submit to a plethysmograph. Indeed, we have no idea what type of physiological testing might exist when Morgan is on supervised release following the completion of his custodial sentence, nor what kind a testing Morgan's probation officer might utilize on Morgan.

We therefore conclude that the special condition of supervised release requiring Morgan to participate in a sex offender treatment and "submit to a risk assessment including physiological testing," R. Vol. I, Doc. 27, violates neither Morgan's constitutional rights nor the statutory and Guideline requirements for the imposition of special conditions of supervised release.

## CONCLUSION

For the foregoing reasons, we AFFIRM Morgan's sentence.

LUCERO, Circuit Judge, concurring.

I concur in the result reached by the majority, but write separately because I conclude that Morgan has not waived his right to appeal the two specialized release conditions at issue in this case; that said, in my opinion his constitutional claims are not ripe for judicial review. Consequently, I would not reach the merits. *See Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) ("We have noted that ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."); *Steel Co. v. Citizens for a Better Env.,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (" 'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.' " (quoting *Ex parte McCardle,* 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868))).

Because a valid waiver of appeal deprives this court of jurisdiction, *see United States v. Rubio,* 231 F.3d 709, 711 (10th Cir.2000), I agree with the analysis set forth in Part I.A of the majority opinion, except that I would conclude that Morgan's waiver does not apply to the claims raised in this case. Morgan's plea agreement included a waiver of the right to appeal a sentence imposed within the statutory maximum or applicable guideline range. (R. Doc. 21 at 5.) The specialized conditions of supervised release at issue in this case were first announced and imposed at sentencing and are not specifically enumerated in the Sentencing Guidelines. Morgan is not challenging the length of his term of imprisonment or supervised release, but rather challenges the constitutionality of judicially created special conditions of supervised release unknown to him at the time he entered the plea agreement.

In determining whether a party's claims are ripe we consider the hardship to the parties and the fitness of the issues for judicial review. *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The hardship at issue in this case is the potential loss of conditional liberty; however, the issues are not fit for judicial review because resolving them requires reliance on hypothetical facts.

Unlike the issues involved in *United States v. White,* Morgan's claims are not

"legal ones that we can easily resolve without reference to concrete facts." 244 F.3d 1199, 1203 (10th Cir.2001). For example, to analyze Morgan's Fifth Amendment claim this court would need to know that Morgan asserted his Fifth Amendment privilege and the specific action taken against him as a result of that assertion. *See, e.g., Minnesota v. Murphy,* 465 U.S. 420, 427–28, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). If there was no assertion of the Fifth Amendment privilege, this court would need to consider the applicability of the exceptions to the requirement that an individual assert the Fifth Amendment privilege. *Id.* at 429–40. Without these relevant facts, it is not possible to analyze Morgan's Fifth Amendment claim. I therefore agree with the majority's statement that "[i]f at some time in the future, the court revokes Morgan's supervised release 'as a penalty for his legitimate exercise of his Fifth Amendment privilege, he remains free to challenge that action at the time it occurs. That eventuality, however, has not yet occurred (and may never occur).'" (Maj. Op. at 887 (quoting *United States v. Davis,* 242 F.3d 49, 52 (1st Cir. 2001)).)

Similarly, in analyzing Morgan's Fourth Amendment claim this court would initially need to know whether Morgan submitted to the requested physiological testing. If he does not submit to the testing, this court would then need to determine whether Morgan had standing to sue. *See Lucero v. Gunter,* 17 F.3d 1347, 1349 (10th Cir.1994). In making this determination, the court would consider the consequences, if any, that flowed from his failure to submit to the testing. At this point it remains to be seen whether Morgan will be required to submit to a plethysmograph and whether he will be reprimanded for failure to submit to the testing. (*See* Maj. Op. at 888 ("[O]ur unwillingness to find a constitutional violation is further heightened by

the fact that, at this point, it is entirely speculative and hypothetical that Morgan will ever be required to submit to a plethysmograph.").) Furthermore, Morgan has not argued that the conditions of supervised release at issue are vague such that the only way he can learn of their reach is "when he face[s] a revocation proceeding." *White,* 244 F.3d at 1203.

I conclude that the constitutional claims raised in this appeal are not ripe for judicial review.