**In re GRAND JURY PROCEEDINGS.**

**Appeal of Ronald Anthony PERDUE, Witness.**

**No. 87–5275**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

June 2, 1987.

D. Robert Silber, Ft. Lauderdale, Fla., for appellant.

J. Brian McCormick, Sp. Atty., U.S. Dept. of Justice, Ft. Lauderdale, Fla., for appellee.

Before TJOFLAT, HATCHETT and CLARK, Circuit Judges.

PER CURIAM:

The appellant in this case, Ronald Perdue, has been committed, pursuant to 28 U.S.C. § 1826(a) dealing with recalcitrant witnesses, under a judgment for civil contempt because of his refusal to testify before a grand jury. This appeal has received expedited consideration under 28 U.S.C. § 1826(b). For the reasons stated in this opinion, we affirm the judgment below.

**I. FACTS**

In 1986, Perdue was a defendant in a criminal case in the United States District Court for the Northern District of Georgia. Perdue and the government engaged in plea negotiations, with the government represented by Assistant United States Attor-

ney Mary Stewart. During the negotiations, as described by the government in the proceedings below in this case, the government made two plea offers: the government would make a low sentence recommendation in exchange for voluntary cooperation in on-going investigations, or the government would make a higher recommendation if Perdue refused to cooperate. In consultation with counsel, Perdue rejected the offer of a low sentence recommendation in exchange for cooperation; instead, on August 18, 1986, Perdue entered a plea and the government made a higher recommendation.[1] According to Perdue's current counsel, Perdue rejected the low sentence offer out of fear of possible harm to his family and himself.

Then, in January of 1987, the United States Attorney for the Southern District of Florida applied for an order pursuant to 18 U.S.C. § 6002 compelling Perdue to testify and granting him immunity from prosecutions based on the testimony. An immunity order was entered on January 7, 1987. On January 9, Perdue was brought in front of a grand jury, where he refused to answer any questions. Following an order to show cause, the district court held a hearing in early February, at which Perdue, through his attorney, argued (1) that the immunity order was ineffective because he could be prosecuted in the Bahamas based on his testimony, and thus he could not be compelled to testify, and (2) that the plea agreement from the Northern District of Georgia barred the government from attempting to force Perdue to testify. On February 27, the district court rejected these arguments and adjudged Perdue in

contempt. On April 1, after Perdue again refused to testify, the court sentenced Perdue to prison under 28 U.S.C. § 1826 and ordered that Perdue's sentence from his criminal conviction (which Perdue was serving at the time) be stayed until after Perdue testifies or the contempt sentence expires by function of law.

Perdue appealed to this court, raising the same arguments that he made to the district court. By order of the court, the court extended until June 2, 1987 the time within which it would rule on the appeal. Because his claim about foreign prosecutions is directly controlled by binding precedent, we will only briefly discuss that issue before turning to Perdue's arguments about his guilty plea.

## II. THE RISK OF FOREIGN PROSECUTIONS

■ Before the district court and on appeal, Perdue has argued that the Fifth Amendment privilege against self-incrimination protects against foreign as well as domestic prosecutions. Thus, according to Perdue, because a district court immunity order cannot bind a foreign jurisdiction, an individual cannot be compelled to testify when doing so might subject him or her to prosecution in a foreign country.

Perdue acknowledges the binding precedent in this circuit which has held that "a possibility of prosecution in a foreign country is not a sufficient basis for immunity from testifying before a grand jury." *In re Baker*, 680 F.2d 721, 721 (11th Cir.1982). That case is founded on earlier precedent that held that the district court has suffi-

---

**1.** The exact text of the plea agreement is relevant to this appeal. After reciting that the defendant will plead guilty to a single count and that any other charges would be dismissed, the plea continued:

Additionally, it is agreed that: the Government will recommend that Defendant be sentenced to a term of incarceration not to exceed 12½ years. Defendant reserves the right to fully inform the Court of his position as to the length of sentence, as well as facility designation. Similarly, the Government reserves the right to present its position to the Court on the matter of facility designation. Additionally, Defendant agrees to forfeit to the

United States all right, title, and interest whatsoever that he had, has, or may obtain in the property, or its proceedings therefrom, which were indicted in the above-referenced indictment. Also, the Government reserves the right to respond to any questions from the Court and to any misstatements of fact. The Government further reserves the right to fully inform the Court, the U.S. Probation Office, and the Parole Commission of the full facts and circumstances surrounding the entire case. Moreover, the Government reserves the right, following sentencing, to oppose a motion for reduction of sentence, or any appeal from or collateral attack on the sentence.

cient power to prevent disclosure of grand jury testimony so as to protect a witness against possible foreign prosecutions. *See In re Brummitt*, 608 F.2d 640, 643 (5th Cir.1979).

To the extent that Perdue is asking this court to reconsider this precedent, this panel is, of course, not at liberty to do so—such arguments must be addressed to the en banc court in a petition for rehearing. Perdue, however, also tries to distinguish the holding in *In re Baker*. He argues that by stating that "a possibility of [foreign] prosecution" does not exempt a witness from testifying, the *Baker* panel was implicitly holding that a stronger showing (i.e., more than a mere "possibility") of foreign prosecution might in fact be sufficient to allow a witness to avoid testifying. Based on this approach, Perdue argues that the district court should have at least held a hearing to consider the possibilities of foreign prosecutions.

While in an appropriate case a district court should consider a hearing on this point, in this case, Perdue has made no proffer of evidence or even given the courts a hint of why, in his case, he claims that there is more than a mere possibility of foreign prosecution. This court's decision in *In re Application of the President's Commission of Organized Crime*, 763 F.2d 1191 (11th Cir.1985), reveals how substantial a showing must be made before the "possibility" of foreign prosecution becomes concrete enough to warrant excusing a witness from testifying. In that case, foreign authorities had already issued an arrest warrant for the witness. Because of the low likelihood of extradition in that case, and the safeguards that the district court can impose to ensure secrecy, this court refused to exempt the witness from testifying. *Id.* at 1198–99. Similarly, in *In re Brummitt*, 613 F.2d 62 (5th Cir. 1980), the appellants made an offer of

proof but that offer did "not present a sufficient showing that [the appellants] will be prosecuted by a foreign sovereign or that the protection of [Fed.R.Crim.P.] rule 6(e) will be inadequate to prevent the disclosure of incriminating testimony." *Id.* at 64. In light of these holdings, we decline to exempt Perdue from testifying because of a risk of foreign prosecution.

## III. THE PLEA AGREEMENT

Perdue argues that the government is bound by its plea agreement, and that it is breaching the agreement by forcing Perdue to testify before the grand jury. Perdue cites *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), for the proposition that "when the plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled."

Perdue argues that he and the government agreed that Perdue could either take a short sentence and testify or he could take a longer sentence and not testify. Although the government acknowledged before the district court that Perdue was offered a shorter sentence recommendation in exchange for cooperation, the actual text of the plea agreement does not address the point. *See supra* note 1. Perdue contends that the agreement was a shorter recommendation in exchange for *any* testimony, while the government contends that the offer was only a shorter sentence in exchange for *voluntary* testimony.[2]

■ Without deciding the question, it seems quite possible Perdue was at least unintentionally misled by the government into thinking that the plea agreement meant a longer recommended sentence, but *no* testimony. The government has not presented any evidence that would make such a misunderstanding implausible. *See*

---

**2.** We note that the affidavit of Assistant United States Attorney Stewart sheds no light on what actually transpired between Perdue and Stewart. The affidavit is simply a conclusory interpretation of what the actual written plea agreement says, and a statement that Stewart is sure that she would not have bargained away the

government's option to attempt to compel Perdue's testimony, although her affidavit indicates that she does not have any clear recollection of what took place. Significantly, it fails to mention any offers made to Perdue, and thus it neither supports nor contradicts Perdue's statements about the plea agreement.

*supra* note 2. Even assuming a misunderstanding, however, we cannot read into the words of the plea agreement any specific terms about testimony. The agreement, which details a number of reservations of rights by both Perdue and the government, simply does not contain any mention of future testimony, whether voluntary or compelled.

The absence of any mention of testimony in the plea agreement sets this case apart from *United States v. Harvey*, 791 F.2d 294 (4th Cir.1986), in which one term of a plea agreement was ambiguous. There the Fourth Circuit decided that the ambiguity must be resolved in favor of the defendant. *See id.* at 303. Here, while there is a clear conflict in the understanding of the plea agreement, the words of the agreement are unambiguous. Within the facts of this case, we cannot rewrite the agreement to include a bar on attempts by the government to compel testimony by Perdue.

In this case, where the government arguably misled Perdue and where Perdue plausibly misunderstood the plea agreement, we cannot enforce an agreement that was never agreed upon with specificity.

## IV. CONCLUSION

For the reasons stated above, we affirm the judgment of the district court. If ultimately Perdue decides to testify, instead of serving the contempt commitment until its expiration, the district court should exercise its significant powers to ensure the secrecy of the proceedings, out of a concern both about the risk of foreign prosecutions and about the safety and well-being of Perdue and his family.

AFFIRMED.

TJOFLAT, Circuit Judge, concurring:

I concur fully in the court's opinion in this case, but would make an additional observation regarding Perdue's claim that the United States Attorney for the Southern District of Florida is bound by a plea agreement promise made by his counterpart in the Northern District of Georgia. If, as Perdue contends, the United States Attorney in that district improperly induced Perdue to plead guilty by making a promise he did not intend to carry out, then Perdue's remedy is to petition the Northern District of Georgia judge who accepted his plea and sentenced him to set aside his sentence and conviction, to reinstate his not guilty plea, and to permit him to proceed to trial. *See* 28 U.S.C. § 2255 (1982). Perdue had no such remedy in the United States District Court for the Southern District of Florida. The only question before that court was whether he should be held in contempt for willfully failing to testify pursuant to a proper grant of immunity.

HATCHETT, Circuit Judge, specially concurring:

I join in the disposition of this case, but for reasons quite different from those expressed by the majority. The district court should be affirmed because no agreement existed. Perdue rejected the offer for an agreement. He cannot now urge the terms of a non-existent "agreement."

Perdue is engaging in legal "sleight-of-hand." The government's offer was for a shorter sentence recommendation in exchange for Perdue's cooperation and testimony. Perdue rejected the offer. That is the end of the matter.

Perdue now seeks to add a term to the non-existent agreement; he says, "since the government offered a shorter sentence recommendation in exchange for my testimony, the other side of the offer must have been that without my testimony, the government would recommend a longer sentence." He then continues, "I got a longer sentence; therefore, the longer sentence must mean that the government is not entitled to my testimony under any circumstances." Perdue's definition of "longer sentence" is his rejection of the offer for the shorter sentence. The simple answer is that the government's offer did not contain a longer sentence recommendation provision.

Why would the government enter into an "agreement" for a longer sentence without testimony? Such a provision would make no sense. In the absence of an agreement,

the government would make no recommendation at all and leave the sentence to be imposed to the court. Therefore, Perdue's "longer sentence" simply means the sentence he received in the absence of an agreement for a shorter sentence.

When an agreement exists, its terms are important; when no agreement exists, as in this case, no terms exist.