**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Daniel GARCIA, Defendant–Appellant.**

**No. 90–6266.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 3, 1991.

Decided Jan. 31, 1992.

As Amended March 2, 1992.

Stanley K. Joynes, III, LeClair, Ryan & Joynes, P.C., Richmond, Va., argued, for defendant-appellant.

Thomas Phillip Swaim, Asst. U.S. Atty., Raleigh, N.C., argued (Margaret Person Currin, U.S. Atty., on brief), for plaintiff-appellee.

Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

Daniel Garcia appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate or correct his sentence because of an alleged breach of his plea agreement by the government. We reverse and remand.

## I.

Appellant Daniel Garcia is a native of Colombia. He speaks almost no English. In 1986, he sold twenty kilograms of cocaine to a government informant, and on November 28 of that year, he was charged in a thirteen-count indictment with conspiracy to possess and deliver cocaine. Plea negotiations quickly ensued.

The government offered to recommend a ten-year sentence if Garcia would agree to plead guilty to one count of the indictment and to cooperate in the drug-trafficking investigation. Garcia feared for the safety of himself and his family in Colombia if he implicated his superiors in the distribution network; accordingly, he turned down the plea offer.

The government then offered to delete the requirement that Garcia cooperate. To compensate for this deletion, the government proposed to increase its recommended sentence to fifteen years. Notwithstanding the much stiffer sentence, Garcia agreed. By letter dated February 13, 1987, the government sent Garcia's counsel a proposed plea agreement. The letter stated that it memorialized an oral agreement reached by telephone the previous day. The first term recounted in the letter was:

In return for this guilty plea to Count One of the Indictment, the government will (a) not require as part of the plea agreement that the defendant cooperate with law enforcement,....

According to the letter, "[a] copy of the plea agreement containing these terms is attached for your review." However, the written plea agreement did not actually contain a provision stating that Garcia was not required to cooperate.

On February 19, 1987, the district court accepted Garcia's guilty plea pursuant to the plea agreement. A full Fed.R.Cr.P. 11 hearing was held; Garcia participated through an interpreter. The court imposed the recommended fifteen-year sentence on May 18, 1987.

Just short of a month later, on June 17, 1987, the same United States Attorney's office had Garcia subpoenaed to testify before a grand jury. On September 8, 1987, Garcia appeared, refused to testify, and stated that he had not been given an oppor-

tunity to contact his counsel. The court permitted him to telephone his attorney. He did so, returned to the grand jury room, and again refused to testify.

On October 13, 1987, Garcia was again brought to the grand jury. Outside the grand jury room, with Garcia's counsel present, the government offered him a letter of immunity and entry into the Federal Witness Protection Program for him and his immediate family. He again refused to testify.

■ On February 19, 1988, the district court[1] found Garcia in contempt and sentenced him to confinement until he purged the contempt or eighteen months expired. Garcia did not testify, and the eighteen months passed. He received no credit against his underlying fifteen-year sentence for the time served for contempt. Garcia's counsel failed to file an appeal from the finding of contempt.

On June 14, 1988, Garcia sent two pro se § 2255 motions from his place of confinement at a federal prison in Seagoville, Texas. One, seeking relief from the finding of contempt because of ineffectiveness of counsel (failure to file an appeal), was sent to Judge Britt, and was received and filed June 20, 1988. The other, seeking to set aside the conviction and withdraw the guilty plea because of an alleged breach of the plea agreement, was sent to Judge Boyle, and was received and filed June 21, 1988.[2]

The motion filed before Judge Britt was dismissed June 21, 1989. Garcia did not appeal this judgment. The motion before Judge Boyle was dismissed on September 11, 1989. The court ruled that the plea agreement was unambiguous and did not

contain a "no cooperation required" clause; therefore, the parol evidence rule barred consideration of the extrinsic evidence that the government made such a promise. This latter order is the subject of this appeal.

## II.

■ The leading Fourth Circuit case on the relationship of commercial contract law to plea agreements is *United States v. Harvey*, 791 F.2d 294 (4th Cir.1986).[3] This comprehensive quote from *Harvey* summarizes our law on the subject:

> In the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts. But the courts have recognized that those rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government."

\*     \*     \*     \*     \*     \*

---

1. District Judge Britt made the contempt finding. District Judge Boyle had sentenced Garcia initially.

2. The government argues that Garcia has abused the writ by filing "successive" petitions. The government made no such argument below, and Garcia's reply brief aptly points out that § 2255 petitions must concern only one sentence and must be filed in the court that imposed the challenged sentence. *See* Supp. Rules Governing 28 U.S.C. § 2255 Proceedings, Rule

2(c). Therefore, it was entirely proper for Garcia to move to set aside the sentence for contempt before Judge Britt and his sentence on the drug conviction before Judge Boyle.

3. The district court relied on *Hartman v. Blankenship*, 825 F.2d 26 (4th Cir.1987), rather than *Harvey*. *Hartman* is distinguishable from this case because the panel majority found that the oral remark at issue was not a promise. Garcia was plainly promised in writing that he would not be required to cooperate.

Private law interpretive principles may be wholly dispositive in an appropriate case. For example, whether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law. If it is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly. Neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind....

On the other hand, both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements. This is particularly appropriate where, as will usually be the case, the Government has proffered the terms or prepared a written agreement—for the same reasons that dictate that approach in interpreting private contracts.

As a necessary corollary, derelictions on the part of defense counsel that contribute to ambiguities and imprecisions in plea agreements may not be allowed to relieve the Government of its primary responsibility for insuring precision in the agreement. While private contracting parties would ordinarily be equally chargeable—so far as enforceability and interpretation are concerned—with their respective counsels' derelictions in negotiating commercial contracts, different concerns apply to bargained plea agreements. Unlike the private contract situation, the validity of a bargained guilty plea depends finally upon the voluntariness and intelligence with which the defendant—and not his counsel—enters the guilty plea. 791 F.2d at 300–301 (cites omitted).

■ Under *Harvey*, we see no avenue to relieve the government of a material prom-

ise contained in the cover letter accompanying the plea agreement. The government prepared the letter and the agreement; the omission of the "no cooperation" promise in the formal agreement could only be due to governmental overreaching, inadvertent omission, the dereliction of defense counsel, or some combination of those factors. None of these reasons would justify relieving the government of its promise.

Strict application of the parol evidence rule might bar consideration of the cover-letter promise.[4] However, we think that the inequity of the result below illustrates why courts ought not rigidly apply commercial contract law to all disputes concerning plea agreements. The government does not dispute that it made the promise—it just wants to take advantage of a rule of contract law to profit from an omission in a contract it prepared. We cannot countenance such unfair dealing.

We hold that the government promised, as a part of the plea agreement, that it would not require Garcia to "cooperate with law enforcement."

### III.

■ The government argues that, even if the plea agreement contains the disputed term, it precludes only "voluntary cooperation," and not "compelled testimony." The government cites three supposedly-similar cases. The most comparable is *In re Grand Jury Proceedings*, 819 F.2d 984 (11th Cir.1987). However, in that case there was nothing in the plea agreement (or anywhere else) that stated that the government would not require cooperation. The defendant argued simply that because the government had dropped an earlier demand for a term requiring cooperation, it had affirmatively agreed not to require it. Though it affirmed the finding of contempt, the panel filed three different opinions. The lead per curiam opinion used a parol evidence rule analysis, 819 F.2d at 986–987, and another stated that there was

---

**4.** Though we need not resolve the issue, Garcia argues that, even under ordinary commercial contract law, "fraud in the inducement" is a ground for rescission of a contract, and the fraud may be proved by extrinsic evidence.

simply no agreement on the point. *Id.* at 987–988 (Hatchett, J., concurring). The third agreed that the contempt order should be affirmed, but suggested that the defendant seek to withdraw his plea through a § 2255 action in the district where he had been convicted. *Id.* at 987 (Tjoflat, J., concurring). This apt suggestion is precisely what Garcia has done here.

*Ouellette v. United States*, 862 F.2d 371 (1st Cir.1988), also cited by the government, is similar only to the extent that the defendant was held in contempt for refusing to testify. There was no plea agreement at all. The defendant cited a letter from his own counsel stating that the government would not require him to cooperate. He did not argue that the government had breached a plea agreement, but rather that his own counsel had been ineffective for leading him to believe that he would not have to testify.

Finally, the government's reliance on *In re Grand Jury Proceeding 90–1 (Bullick)*, 754 F.Supp. 829 (D.Colo.1990), is directly precluded by *Harvey.* Though the defendant had been promised that he would not have to "cooperate or testify," the court held that the promise of an Assistant United States Attorney in one district does not bind another in a different district. The court, 754 F.Supp. at 832 n. 4, explicitly declined to follow this circuit's contrary holding in *Harvey,* 791 F.2d at 302–303.

In short, there is no general rule that, as a matter of law, "cooperate" in a plea agreement means only "voluntary" cooperation. The government knows the word "voluntary," and could have avoided any ambiguity by using it. Garcia argues that "cooperate" includes even compelled testimony, especially in light of his reasons for insisting on not cooperating—fear for the safety of his family. We think it perfectly plausible that Garcia would trade five years of freedom for the privilege of remaining silent, but absurd that he would sacrifice that time merely to force the government to send him a subpoena.

Moreover, Garcia's lack of fluency in English requires special precision in material terms of a plea agreement. We should not strictly construe ambiguous English terms against someone with no knowledge of idioms or between-the-lines usage. Courts, prosecutors, and defense attorneys alike must be especially vigilant in assuring that a language barrier does not unfairly prejudice a criminal defendant. *See generally, United States v. Garcia-Garcia,* 939 F.2d 230, 233 (5th Cir.1991) (error in Rule 11 colloquy not harmless in light of, among other factors, defendant's inability to speak English); *Nevarez–Diaz v. United States,* 870 F.2d 417 (7th Cir. 1989) (defendant who could not speak English failed to comprehend nature of charges and conduct that would support conviction); *Marino v. Ragen,* 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170 (1947) (due process violated where, among other errors, arresting officer served as defendant's interpreter).

We could not interpret "cooperate" as the government suggests without resolving a serious ambiguity in its favor. Inasmuch as *Harvey* requires the government to bear the burden of this ambiguity, we hold that Garcia is entitled to relief.

## IV.

The government urges that even if, as we have found, Garcia is entitled to relief, the proper remedy is to reduce Garcia's sentence by eighteen months. The government asserts that this reduction would restore Garcia to the full benefit of his bargain, and the breach of the plea agreement would be cured.

The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy. *Andrews v. United States,* 373 U.S. 334, 339, 83 S.Ct. 1236, 1239, 10 L.Ed.2d 383 (1963). In this respect, § 2255 is congruent with the common-law relief available on direct appeals involving breached plea agreements. *See, e.g., Santobello v. New York,* 404 U.S. 257, 262–263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (remanding to state court to determine whether withdrawal of plea or specific performance of agreement is appropriate remedy); *United States v. Conner,* 930 F.2d 1073, 1076 (4th Cir.1991) (dis-

cussing rule); *United States v. Jureidini*, 846 F.2d 964, 966 (4th Cir.1988) (remanding to district court to fashion relief); *United States v. Wilson*, 669 F.2d 922, 923 (4th Cir.1982) (affirming district court's decision to resentence defendant, rather than permit him to withdraw plea). Indeed, this flexibility serves the interests of many defendants, who may prefer specific performance to withdrawal. A new opportunity to plead may be a pyrrhic victory for a defendant who faces the same (or greater) volume of evidence of guilt that persuaded him to plead guilty in the first place.

In this case, the only consequence of the breach of the plea agreement has been an increase in Garcia's bargained-for sentence. Accordingly, we believe that resentencing is the proper § 2255 relief.

The judgment is reversed. The case is remanded with instructions to grant the § 2255 motion and to resentence Garcia to fifteen years of imprisonment, with credit for all time served since his arrest on the drug charges, including the eighteen months he served for contempt.

REVERSED AND REMANDED.