**In re Grand Jury Witness
Ralph ALTRO.**

**United States of America, Appellee,**

**v.**

**Ralph Altro, Appellant.**

**Docket No. 98–6165.**

United States Court of Appeals,
Second Circuit.

Argued May 3, 1999.
Decided June 4, 1999.

Colleen P. Cassidy, The Legal Aid Society, New York, New York, for Appellant.

Stanley J. Okula, Jr., Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney, Jeremy H. Temkin, Assistant United States Attorney, of counsel), for Appellee.

Before: CABRANES and SACK, Circuit Judges, and SHADUR,* District Judge.

Judge SHADUR dissents by separate opinion.

JOSÉ A. CABRANES, Circuit Judge:

■ This appeal presents the question of whether the terms of a plea agreement can be supplemented by the defendant's asserted understanding that the agreement would exempt him from having to provide grand jury testimony, notwithstanding the absence of any written or oral promise by the Government to that effect. Ralph Altro, relying on such an understanding, appeals from an order of the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., *Judge*) holding him in civil contempt for refusing, without just cause, to testify as a grand jury witness. We agree with the district court that such an understanding cannot be enforced as part of a plea agreement, especially where the written agreement includes a valid integration clause—that is, a provision stating that there are no promises or understandings between the parties other than those explicitly set forth in the written agreement. Accordingly, we affirm the district court's order holding Altro in contempt.

## I.

In April 1997, Altro was arrested and charged with postal burglary, in violation of 18 U.S.C. § 2115. Thereafter, the Government sought Altro's cooperation in connection with its investigation of a series of similar crimes that had occurred during the previous year. The Government contemplated entering into a cooperation agreement whereby, in exchange for such assistance, it would move, pursuant to U.S.S.G. § 5K1.1, for a reduction of Altro's sentence. Altro refused to cooperate with the Government, however, and no such agreement was reached or even prepared in draft form.

In July 1997, Altro and the Government did enter into a plea agreement providing, *inter alia,* that (1) Altro would plead guilty to one count of postal burglary in connection with an April 3, 1997 burglary, (2) Altro admitted his involvement in four other postal burglaries that resulted in a total loss of over $375,000, and (3) the Government would not prosecute Altro for the additional crimes. The final paragraph of the plea agreement stated:

> Apart from any written Proffer Agreement(s) that may have been entered into between this Office and Ralph Altro, this Agreement supersedes any prior understandings, promises, or conditions between this Office and Ralph Altro. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

The district court subsequently accepted Altro's guilty plea and, in November 1997, sentenced him principally to a 27-month term of imprisonment, a three-year term of supervised release, and restitution in the amount of $401,517.

Approximately seven months later, the Government subpoenaed Altro to testify before a grand jury investigating other individuals believed to have been involved in the five postal burglaries that he had admitted committing. Upon a Government request which followed Altro's assertion of his Fifth Amendment privilege

---

* The Honorable Milton I. Shadur, of the United States District Court for the Northern District of Illinois, sitting by designation.

against self-incrimination, the district court issued an order, pursuant to 18 U.S.C. §§ 6002–6003,[1] conferring use immunity and compelling him to testify. Nevertheless, Altro maintained his refusal to testify, and the Government filed a motion for an order holding him in civil contempt, pursuant to 28 U.S.C. § 1826(a).[2]

At the first hearing on the contempt motion, Altro argued primarily that, despite the grant of use immunity, his fear of prosecution by state—as opposed to federal—authorities gave him "just cause" for refusing to testify. Altro also stated that the subpoena was "a clear abuse of the Grand Jury process" because the Government previously had sought, unsuccessfully, to obtain his voluntary cooperation in exchange for the possibility of a lesser sentence pursuant to U.S.S.G. § 5K1.1. The district court instructed the parties to brief the issue of Altro's asserted fear of state prosecution. After researching the issue, however, Altro's then-attorney—the same attorney who had represented him throughout his criminal proceeding, including his plea negotiations and his entry of a guilty plea—agreed with the Government that the grant of use immunity extended to state prosecutions. Therefore, instead of briefing that issue, the attorney submitted a 49–paragraph affirmation arguing that the grand jury subpoena breached "the spirit" of Altro's plea agreement.

According to the attorney's affirmation, Altro had believed that his plea agreement would exempt him from having to testify before the grand jury, and without such an understanding he would not have admitted his involvement in the four uncharged burglaries, which increased his offense level under the Sentencing Guidelines. Although conceding that the written plea agreement does not refer to any such un-

**1.** 18 U.S.C. § 6002 provides, in pertinent part, as follows:

> Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before [a] grand jury of the United States, ... and the person presiding over the proceeding communicates to the witness an order issued under this title, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6003 provides, in pertinent part, as follows:

> (a) In the case of any individual who has been or may be called to testify ... before ... a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this title.

> (b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, the Associate Attorney General or any designated Assistant Attorney General or Deputy Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—
> (1) the testimony or other information from such individual may be necessary to the public interest; and
> (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

**2.** 28 U.S.C. § 1826(a) provides, in pertinent part, as follows:

> Whenever a witness in any proceeding before ... [a] grand jury of the United States refuses without just cause shown to comply with an order of the court to testify ..., the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of ... the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

derstanding, the affirmation stated that Altro's allocution to uncharged conduct "was negotiated in exchange for no further prosecution and based on no cooperation." However, the affirmation by Altro's attorney did not indicate that the Government had made any statement to foster this understanding. Instead, the affirmation merely asserted:

> The government did not inform [Altro], nor did the Court, that at any time he could be forced to give up information that he had chosen to not to [sic] give up voluntarily[;] it was not contemplated at the time of the agreement that he would be forced to cooperate.

> \*     \*     \*

> At no time did the government suggest that they would seek a Grand Jury Subpoena, nor was it mentioned at any time.

After a further hearing on this and other issues, the district court rejected Altro's arguments and, on July 16, 1998, held him in civil contempt. The district court reasoned that, in light of the written plea agreement's integration clause, any understanding outside of that agreement was unenforceable. This appeal followed.[3]

## II.

We have long interpreted plea agreements under principles of contract law, *see United States v. Rodgers*, 101 F.3d 247, 253 (2d Cir.1996), but have noted that "[p]lea agreements ... are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *United States v. Ready*, 82 F.3d 551, 558 (2d Cir. 1996) (internal quotation marks omitted).

Our concern for fairness is rooted in an appreciation of the fact that, unlike ordinary contracts, plea agreements call for defendants to waive fundamental constitutional rights, and in an awareness that the Government generally drafts the agreement and enjoys significant advantages in bargaining power. *See United States v. Lawlor*, 168 F.3d 633, 636 (2d Cir.1999); *Ready*, 82 F.3d at 558. Accordingly, we hold the Government "to the most meticulous standards of both promise and performance." *Lawlor*, 168 F.3d at 636 (internal quotation marks omitted). In keeping with these general principles, we determine whether a plea agreement has been breached by looking to the reasonable understanding of the parties and by resolving any ambiguities against the Government. *See, e.g., Rodgers*, 101 F.3d at 253.

In this case, nothing in the written plea agreement could reasonably be viewed as foreclosing the Government's subpoena of Altro to testify before the grand jury. Indeed, Altro does not maintain that such a term can be found within the written agreement itself; instead, he invokes an understanding that he claims was "implicit in the whole course of dealing between" himself and the Government. Altro recognizes that, in light of the express integration clause quoted above, a strict application of the parol evidence rule would preclude us from considering evidence of such an implicit understanding. *See Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir.1997) ("parol evidence rule forbids proof of an oral agreement that might add to or vary the terms of a written contract that was intended to embody the entire agreement between the parties") (internal quotation marks omitted);

---

**3.** At oral argument, Altro's appellate counsel reported that, in February 1999, the district court had vacated the contempt order (and remanded Altro to the custody of the Bureau of Prisons for completion of his criminal sentence) on the ground that further confinement would not have induced Altro to comply with the order to testify. The appeal is not moot, however, because the district court's original contempt order provided that the time Altro served pursuant to the order would not count toward his criminal sentence, which he was serving when the order was entered. If we were to conclude that the contempt order was erroneously entered, seven months would be credited toward Altro's completion of his criminal sentence.

*see also Petereit v. S.B. Thomas, Inc.,* 63 F.3d 1169, 1177 (2d Cir.1995).

In arguing for a relaxation of the parol evidence rule in this context, Altro relies principally on *United States v. Garcia,* 956 F.2d 41 (4th Cir.1992), in which the Fourth Circuit held that a "no cooperation" term was enforceable where it had been memorialized in the Government's cover letter to the defendant but not in the attached plea agreement itself.[4] The Court of Appeals in *Garcia* noted that "[s]trict application of the parol evidence rule might bar consideration of the cover-letter promise," but it determined that the Government should not benefit from a contract rule that would allow it to avoid fulfilling a written promise it admittedly had made. *See id.* at 44. *Garcia* is readily distinguishable, however, because the affirmation of Altro's attorney does not indicate that the Government here made any statement—oral or written—that could be construed as a "no cooperation" promise.[5] Accordingly, even if, in appropriate circumstances, we might consider relaxing the parol evidence rule in order to hold the Government "to the most meticulous standards of ... promise," *Lawlor,* 168 F.3d at 636, there was, in this case, no promise for us to enforce.

■ Furthermore, in the absence of such a promise, it is irrelevant whether Altro plausibly could have believed that he would be exempt from testifying, because any such unilateral understanding would be insufficient to supplement the terms of the written plea agreement. *See In re Grand Jury Proceedings (Perdue),* 819 F.2d 984, 986–87 (11th Cir.1987) (finding

plausible, but declining to enforce, an identical misunderstanding where the Government offered a shorter sentence recommendation in exchange for cooperation, the defendant refused, and the ultimate plea agreement did not address the point of cooperation). We decline to require the Government to anticipate and expressly disavow every potential term that a defendant might believe to be implicit in such an agreement. Accordingly, we hold that, especially where—as here—the Government incorporates into the plea agreement an integration clause expressly disavowing the existence of any understandings other than those set forth in the plea agreement, a defendant may not rely on a purported implicit understanding in order to demonstrate that the Government is in breach.

### III.

■ The dissent suggests, *post* at 377, that our interpretive analysis of Altro's plea agreement with the Government is irrelevant, on the theory that, regardless of the actual terms of the agreement, Altro's subjective expectations could provide him "just cause" for defying the district court's order to testify. We disagree with this suggestion, which we note has not even been made by Altro's able appellate counsel, who has consistently argued that the plea agreement should be liberally interpreted so as to include Altro's understanding. In our view, Altro would have had "just cause" for defying the court's order only if the plea agreement precluded the Government from calling him before

---

**4.** The cover letter stated that "[i]n return for this guilty plea ..., the government will [ ] not require as part of the plea agreement that the defendant cooperate with law enforcement." *Garcia,* 956 F.2d at 42. The court went on to find that the term "cooperate" could reasonably be interpreted to include compelled testimony, and it resolved this ambiguity against the Government. *See id.* at 44–45.

**5.** In his reply brief, Altro argues that the absence of evidence in the record of an oral promise is attributable to the district court's

refusal to consider evidence extrinsic to the written plea agreement. As quoted above, however, the affirmation of Altro's then-attorney, which was submitted before any ruling by the district court, merely stated that the Government had failed to inform or suggest to Altro that he could be subpoenaed to testify even if he did not cooperate voluntarily. The affirmation does not contain the slightest suggestion of a potentially misleading statement, much less an actual promise, by the Government.

the grand jury, and not merely if *Altro believed* that the Government had agreed not to do so.

We also disagree with the dissent's statement that our holding is "out of synch" with the interpretive principles articulated in *United States v. Ready*, 82 F.3d 551, 558–59 (2d Cir.1996). In *Ready*, which is quoted above, we adopted the Fourth Circuit's statements in *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986), to the effect that ordinary contract rules may need to be tempered when applied to the interpretation of plea agreements in particular cases. Significantly, the Fourth Circuit in *Harvey* elaborated on this general principle as follows:

> If [a written plea agreement] is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly. *Neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind.* Such an approach is conformable not only to the policies reflected in private contract law from which it is directly borrowed, but also to constitutional concerns of fundamental fairness in "bargaining" for guilty pleas, and to the wider concerns expressed in the exercise of supervisory jurisdiction over the administration of federal criminal justice.

*Harvey*, 791 F.2d at 300 (emphasis added and citations omitted). Consistent with these principles, Altro cannot unilaterally modify the plea agreement to preclude the grand jury subpoena on the basis of an uninduced, mistaken belief that he had bargained for an exemption from all testimony. And, since no such unilateral modification of the plea agreement was possi-

ble, it was entirely appropriate for the Government to issue the subpoena.

## IV.

In the circumstances presented here, the district court correctly concluded that the subpoena of Altro did not violate his prior plea agreement with the Government. Accordingly, we affirm the district court's order holding Altro in civil contempt for refusing to testify before the grand jury.

SHADUR, District Judge, dissenting:

By framing the question as one of contract law approached from the perspective of the United States, the majority has reached a seemingly unimpeachable result. True enough, we are confronted with a plea agreement ("Agreement") that was silent on the issue of Ralph Altro's being subject to being haled before a grand jury in the future and that concluded with a classic integration clause negating any promises not set forth in the Agreement. In those terms the problem does not even appear to qualify as a tough question for a first year law school contracts exam.

But I suggest that oversimplifies the issue at Altro's expense. As his current counsel frames the question presented in the opening appellant's brief before us:

> Whether the civil contempt order should be vacated because the district court's order compelling appellant to testify in the Grand Jury violated the implicit terms of the plea agreement between the parties.

That may perhaps be less than felicitously phrased, so as to fuel the analysis in the preceding paragraph. But it must be recognized that is not Altro's fault. After all, it is neither his original appointed counsel (who obviously did not anticipate the grand jury testimony problem that later faced Altro [1]) nor his present appointed counsel

---

1. Indeed, as I point out later, there can really be no doubt that the prospect of taking Altro before a grand jury to implicate others, despite his express rejection of a lesser prison term for himself if he had agreed to cooperate against the same people, was not contemplated by the prosecutor who negotiated the Agreement either. And I submit that has to

who must serve the custodial time for civil contempt—it is Altro himself.

Because the issue is one of contempt—of Altro's violation of a court order—I submit that it is *his* mindset, and not that of the government in its impersonal embodiment, that is at issue. To reframe the question in terms of the statutory source for the civil contempt order (28 U.S.C. § 1826(a), quoted in footnote 2 of the majority opinion), the necessary finding that Altro's refusal to testify was "without just cause shown" squarely places his reason for doing so, and hence his own intention and understanding in entering into the Agreement, into issue. And the record is totally devoid of direct information from Altro on that score (it is of course obvious that his intention and his understanding had to be derived from his client-lawyer communications with his district court counsel, rather than from the prosecutor).

But I further suggest that one need not accept that approach to find the government's, and hence the majority's, position flawed. Where I regretfully part company with the majority is in its emphasis on the absence of "any statement—oral or written—that could be construed as a 'no cooperation' promise." Let me elaborate on why I believe that approaches the question before us from the wrong direction.

For that purpose it seems useful to pose a hypothetical that is clearly at odds with the facts, but that highlights the problem to be laid at the doorstep of the government in its collective sense—in this instance attributable not to any conduct on the part of the prosecutor who handled Altro's criminal case, but rather to the conduct of the different AUSA who later came up with the idea of calling Altro before the grand jury in aid of the sepa-

rate case being handled by that second prosecutor. There is of course nothing at all to suggest that either Altro's prosecutor or Altro's original counsel (or for that matter Altro himself) had the possibility of such later testimony in mind when Altro's plea agreement was in the works. Indeed, if anyone had in fact thought of and addressed that possibility at that time, we can be sure that the United States would now have adduced that information and argued that point in opposition to Altro's current effort.

But let us indulge a different and totally hypothetical scenario, purely for the sake of argument and to throw a searchlight on the problem that I see with the majority's emphasis on the fact that the Agreement was concededly silent on the subject of such later grand jury testimony. Suppose that the contrary had been true on the government's side of the negotiation—suppose instead that the prosecutor handling Altro's case, at the time that the plea agreement was being negotiated, had in mind that as soon as the Agreement was signed and accepted he would call Altro before the grand jury to provide incriminating information as to the very people with respect to whom Altro had refused to cooperate, at the price of his being sentenced to additional hard time under the Sentencing Guidelines. There still would not have emanated from the government "any statement—oral or written—that could be construed as a 'no cooperation' promise." Yet would anyone view *that* kind of "Gotcha!" position as acceptable prosecutorial conduct? [2] Would not *that* have evoked the same kind of judicial response that this Circuit voiced so eloquently in *United States v. Ready*, 82 F.3d 551, 558–59 (2d

be considered as a key factor in whether Altro's later refusal to testify before the grand jury was contemptuous.

**2.** After all, under that fictional scenario Altro's original prosecutor could also have pointed to the plea agreement's silence on the subject of grand jury testimony, and to the

integration clause negating any further promises—just as the new AUSA who was assigned to handle not Altro's criminal case, but one brought against other targets who were assertedly Altro's confederates, has done both before the district court in the grand jury proceedings and in his arguments before us.

Cir.1996)? [3]

As we said in [*United States v.*] *Yemitan,* [70 F.3d 746 (2d Cir.1995),] "[p]lea agreements are construed according to contract law principles." 70 F.3d at 747. But of course, different types of contracts are subjected to different interpretive rules and background understandings. *See, e.g., Farnsworth on Contracts* § 4.26 at 313–15 (2d ed.1990)(in interpreting "standardized agreements," courts use several "judicial techniques" which sometimes have the effect of relieving the non-drafting party of its contractual obligations). "Plea agreements ... are unique contracts 'in which special due process concerns for fairness and the adequacy of procedural safeguards obtain.'" *Carnine v. United States,* 974 F.2d 924, 928 (7th Cir.1992)(quoting *United States v. Ataya,* 864 F.2d 1324, 1329 (7th Cir.1988)); see also *United States v. Herrera,* 928 F.2d 769, 773 (6th Cir.1991)("Although the plea agreement is contractual in nature, it is by no means an ordinary contract."); *United States v. Giorgi,* 840 F.2d 1022, 1026 (1st Cir.1988)("unique nature of a plea agreement"); Frank H. Easterbrook, *Plea Bargaining as Compromise,* 101 Yale L.J.1969, 1974–75 (1992)("The analogy between plea bargains and contracts is far from perfect....Plea bargains are preferable to mandatory litigation—not because the analogy to contract is overpowering, but because compromise is better than conflict."); Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract,* 101 Yale L.J. 1909, 1930 (1992).

As the Fourth Circuit has recognized, in interpreting plea agreements,

courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts. But the courts have recognized that those rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitution-ally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights— to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government.

*United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986) (citations and internal quotation marks omitted).

Several rules of interpretation, consistent with general contract law principles, are suited to the delicate private and public interests that are implicated in plea agreements. First, courts construe plea agreements strictly against the Government. This is done for a variety of reasons, including the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power. *See Carnine,* 974 F.2d at 928; *Giorgi,* 840 F.2d at 1026; *United States v. De la Fuente,* 8 F.3d 1333, 1338 (9th Cir.1993); see also *Farnsworth on Contracts,* § 7.11 at 518 ("common" rule that terms are construed against drafter "often operates against a party that is at a distinct advantage in bargaining ... [but] may be invoked even if the parties bargained as equals.").

Although no inquiry was ever made on those lines by the district court, I would be

---

**3.** Ordinarily I am loath to repeat quotations from earlier cases at any length, preferring instead simply to cite them as authority. In this instance, however, it seems to me that the teaching of *Ready* is so powerful, and is so out of synch with the approach taken by the meticulously articulated majority opinion, that repetition of the earlier language is important.

astonished if the AUSA handling Altro's prosecution and negotiating a plea agreement had any such hide-the-ball tactic in mind. And that clearly unacceptable fictional scenario cannot fairly be brushed aside as noncomparable to the present case just because in that instance the AUSA would have been guilty of a misleading omission, which was absent here. Instead I submit that it simply will not do for an AUSA who comes on the scene later, having his own fish to fry (quite properly, to be sure) in a separate prosecution, to advance that same "Gotcha!" argument by pointing to the fact that neither Altro's prosecutor nor Altro's defense counsel (to say nothing of Altro himself, of course) had thought of or had anticipated the possibility of later grand jury compulsion during the course of negotiation of the plea agreement.

In that situation it surely cannot be said that it is unreasonable for a lay person such as Altro to have believed that he had bargained away more time in custody in exchange for his having put behind him *any* prospect of incriminating his compatriots in *any* way. And it just as surely follows that such a reasonable belief must satisfy the showing of "just cause" that under the statute negates any incarceration for civil contempt. This is why the conventional contractual approach that would fit a commercial transaction cannot fairly be employed as the predicate for tacking added time onto Altro's criminal sentence with the label of civil contempt.[4]

It is true, as the majority opinion states, that *United States v. Garcia,* 956 F.2d 41 (4th Cir.1992) may arguably be distinguished from Altro's situation in some of its factual aspects. But I suggest that no distinction of that case is persuasive in terms of undercutting the sound policy that it reflects. And it should be remembered that *Garcia* came from the same

court as *Harvey,* which this Court's earlier-quoted opinion in *Ready* quoted so approvingly.

If the government is viewed, as it should be, as a unitary whole having the kinds of obligations (such as maintaining the "honor of the government" and "public confidence in the fair administration of justice") that are expressed in *Harvey, Ready* and like cases, what the new prosecutor has done by defeating Altro's obvious expectations is unacceptable. Though I certainly ascribe no fault to the well-reasoned majority opinion once its basic premise is accepted, I respectfully suggest that the premise itself is flawed. Accordingly I respectfully dissent.

4. Because of the contractual analysis employed by the district court, and now endorsed by the majority, that inquiry into—and more importantly, that evaluation of—Altro's belief and its reasonableness in terms of the statutory "just cause" inquiry has never been made.