# UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                                    No. 00-7807

YITSCHAK EBERT,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CR-95-84-BR)

Argued: April 2, 2002

Decided: July 15, 2002

Before NIEMEYER, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge Niemeyer wrote
a dissenting opinion.

## COUNSEL

**ARGUED:** David I. Schoen, Montgomery, Alabama, for Appellant.
Anne Margaret Hayes, Assistant United States Attorney, Raleigh,
North Carolina, for Appellee. **ON BRIEF:** John Stuart Bruce, United
States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Yitschak Ebert was convicted in 1996 in the Eastern District of North Carolina for his role in a conspiracy to buy and sell stolen over-the-counter drugs and health and beauty aids. He seeks the return of office equipment and inventory seized in 1995 from his place of business in the Eastern District of New York and currently held by the government in North Carolina. Toward this end, he filed motions for the return of the property under Fed. R. Crim. P. 41(e) in the Eastern District of North Carolina on June 15 and June 20, 2000. Relying on our decision in *United States v. Garcia*, 65 F.3d 17 (4th Cir. 1995), the district court dismissed the motions without prejudice. The court explained that because the motions had been filed after the conclusion of Ebert's criminal proceedings, the only proper venue for the motions was the district of seizure, the Eastern District of New York. Because we agree that Ebert did not seek the return of his office equipment and inventory until after the conclusion of his criminal proceedings in the Eastern District of North Carolina, we affirm the district court's order.

I.

On May 2, 1995, Ebert was arrested in the Eastern District of New York in connection with a North Carolina investigation of a conspiracy to buy and sell stolen over-the-counter drugs and health and beauty aids. In connection with Ebert's arrest, the government obtained a warrant from the United States District Court for the Eastern District of New York and seized a Chemical Bank account containing $20,192.66 that was registered in the name of Ebert's business, M & I Distributors, Inc. (M & I). The government also seized inventory and office equipment (including computers, a copier, and a shrink-wrapping machine) from M & I. The government transported the property seized from Ebert's business in New York to the

Eastern District of North Carolina, where it has been stored since 1995. Ebert and nine other defendants were indicted in the Eastern District of North Carolina. On August 30, 1996, a jury convicted Ebert of one count of conspiring to receive stolen property shipped in interstate commerce and to launder money; he was also convicted on several substantive counts. He was sentenced to 67 months of imprisonment and 36 months of supervised release. The district court also entered a forfeiture judgment against Ebert in the amount of $100,000. On appeal we affirmed Ebert's conspiracy conviction, but vacated the convictions on the substantive counts because venue for the trial of those counts was not proper in the Eastern District of North Carolina. *United States v. Ebert*, 1999 WL 261590 (4th Cir. May 3, 1999) (unpublished per curiam). We remanded for dismissal of the vacated charges and for resentencing on the conspiracy count. On remand the district court resentenced Ebert to 52 months in prison and 36 months of supervised release. The amended judgment was entered on October 28, 1999.

On November 12, 1999, Ebert filed a Rule 41(e) motion with the district court seeking the return of the funds the government had seized from the account at Chemical Bank; his motion also sought accrued interest and the return of a cost bond posted for the account on October 13, 1995. The government consented to the return of the funds, and the district court entered a December 10, 1999, order directing the government to return the bank account funds, the cost bond, and the accrued interest on both amounts.

In March 2000 the government began efforts to dispose of documents and other property that had been gathered in the course of the investigation and prosecution of Ebert and his co-defendants. The government sent a letter to Ebert's counsel on April 7, 2000, explaining that it was holding computer equipment seized from M & I in 1995 and requesting that Ebert arrange for the pickup of these items. In the course of further correspondence with government officials, Ebert's counsel learned that the government also retained possession of a copier and a shrink-wrapping machine that had been seized from M & I. On June 15, 2000, Ebert filed with the district court a "Motion for Consideration of Outstanding Issues Concerning the Return of Seized Property." In this motion Ebert asked the court to require the government to provide a "full accounting of the disposition and status

of any and all property seized from Mr. Ebert and/or M & I" and to order the government to return all seized property that had not been used to satisfy the $100,000 forfeiture judgment returned by the jury.[1] Ebert alleged that the property wrongfully retained by the government included "valuable office equipment, product far in excess of $100,000 in value, and other items." In addition, Ebert asked the district court to take up the question of whether he should be compensated for the diminution in value of his office equipment during the time it was retained by the government and for the value of any property lost or destroyed by the government. Shortly after filing this motion, Ebert's attorney received a letter from the government advising him that it intended to dispose of Ebert's property during the week of June 26, 2000, if Ebert had not picked it up by that time. Ebert responded by filing a "Motion to Prohibit the Government from Disposing of Seized Property" on June 20, 2000. In that motion Ebert argued that the government should not be allowed to dispose of his property while his motion for an accounting was still pending. He further argued that because the government had transported the seized property from New York to North Carolina, the government should also bear the expense of returning the property to his family in New York. In its response the government contended that Ebert's motions were moot because the government stood ready to return the computer equipment, the copier, and the shrink-wrapping machine as soon as Ebert could make the necessary arrangements to retrieve these items.

The district court treated Ebert's June 15 and June 20, 2000, motions as Rule 41(e) motions for the return of seized property and dismissed them without prejudice in a September 18, 2000, order. The court first observed that the motions were not moot because Ebert sought more than merely an offer to return the disputed office equipment. It explained that Ebert had also requested "that the government provide him with a full accounting of the property that is being held, that it pay for the costs of transporting the property back to New York, and [that it] compensate him for the diminished value of the property." Nevertheless, the court concluded that under *Garcia* the

---

[1]Apparently, Ebert has no records that would enable him to determine what property the government seized from M & I and is therefore dependent on the government to supply this information.

motion could only be brought in the district where the property had been seized (the Eastern District of New York) because "defendant's criminal proceedings in this court have concluded." Ebert appeals.

## II.

Rule 41(e) provides:

> A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the *district in which the property was seized* for the return of the property on the ground that such person is entitled to lawful possession of the property. . . . If a motion for return of property is made or comes on for hearing in the *district of trial* after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

Fed. R. Crim. P. 41(e) (emphasis added). Here, Ebert seeks to recover property lawfully seized but no longer needed by the government. The question is whether venue for Ebert's motions is proper in the district of seizure, in the district of trial, or in both.

*Garcia* provides the starting point for our analysis. In that case we held that although a post-conviction motion for return of property is a civil action, "Rule 41(e), with its district-of-seizure venue provision, applies to all actions to recover property seized in connection with a criminal investigation, notwithstanding their 'civil' nature." *Garcia*, 65 F.3d at 21. We explained that a motion for the return of property may always be made in the district where the property was seized, but added that venue for such a motion is also proper in the district of trial during a "pending criminal proceeding." *Id.* at 20. In *Garcia* the defendant had pled guilty to a drug offense in the Eastern District of North Carolina in 1987 and was found in contempt by that court in 1988. *See United States v. Garcia*, 956 F.2d 41, 42-43 (4th Cir. 1992). In 1994 he filed a Rule 41(e) motion in the Eastern District of North Carolina for the return of property that had been seized in the Southern District of Florida and was still being stored there. On these facts, we held that there was "no support, in the text of the rule or in policy, for continuing a trial court's 'ancillary' jurisdiction where . . . the criminal proceeding has long since ended and the trial court exercises

no control over the property." *Garcia*, 65 F.3d at 20. The question in this case is whether Ebert's criminal proceedings were still "pending" under *Garcia* when Ebert filed his Rule 41(e) motions regarding the office equipment and inventory seized from M & I. The answer depends both on when Ebert filed the relevant Rule 41(e) motions and on what it means for a criminal proceeding to be "pending."

Ebert makes two different arguments that his criminal proceedings were still pending when he moved for the return of his property under Rule 41(e). The first argument is that his Rule 41(e) motion was filed on November 12, 1999, and that his criminal proceedings were still pending in the district court at that time because the court did not dispose of the final motion regarding his resentencing until November 22, 1999. This argument depends on the claim that a criminal proceeding is pending under *Garcia* whenever any part of a criminal case (including a remand for resentencing) is before the district court. Although Ebert's proposed definition of when a criminal proceeding is pending may well have merit, his first argument fails because the Rule 41(e) motion filed on November 12, 1999, concerned only the funds seized from M & I's account at Chemical Bank. In that motion Ebert asked the court for an order "directing that the property more particularly described below immediately be returned to the movant, with accrued interest and bond money." The only property described in the motion is the Chemical Bank account; no mention is made of seized office equipment or inventory. The Rule 41(e) motions relating to the office equipment and inventory still held by the government were not made until June 2000, long after the sentencing proceedings in the district court had ended.[2] Accordingly, we conclude that even

---

[2]Ebert argues that there was only one Rule 41(e) motion and that his June motions regarding the seized inventory and office equipment were simply continuations of that original motion. This reading of the relevant motions is untenable. The November 12, 1999, motion was directed solely to the Chemical Bank account and was effectively granted by the district court's December 10, 1999, order directing the government to return the seized funds. Ebert's first motions to address the property at issue in this case were not filed until June 2000. Ebert is correct that only the November 12, 1999, motion was captioned as a Rule 41(e) motion, but the district court was correct to regard Ebert's June 15 and 20 motions as Rule 41(e) motions. Indeed, the court had little choice in the matter because we said in *Garcia* that "Rule 41(e) . . . applies to all actions to recover property seized in connection with a criminal investigation." *Garcia*, 65 F.3d at 21.

if Ebert's criminal proceedings were pending in the district court on November 12, 1999, this would not be enough to show that venue in the district of trial was proper for the Rule 41(e) motions relating to the property at issue in this case.

Ebert's second argument urges us to adopt a much broader reading of when a criminal proceeding is pending. In essence, Ebert argues that a proceeding is pending under *Garcia* so long as it is pending *in some court* on direct review. Here, this would mean that Ebert's criminal case was pending, and venue for his Rule 41(e) motion was proper in the district of trial, until the Supreme Court's October 1, 2001, denial of his petition for certiorari on issues related to his resentencing. *Ebert v. United States*, 122 S. Ct. 78 (2001) (mem.). Such a broad reading of what it means for a criminal proceeding to be pending has some force as a matter of policy. Indeed, by adopting that definition, we would move our circuit's position closer to that of the Second, Eighth, and D.C. Circuits, all of which have held that a trial court may exercise its ancillary jurisdiction to hear motions for the return of property even after all criminal proceedings have ended. *See Thompson v. Covington*, 47 F.3d 974, 975 (8th Cir. 1995); *United States v. Giovanelli*, 998 F.2d 116, 118-19 (2d Cir. 1993); *United States v. Wilson*, 540 F.2d 1100, 1102-04 (D.C. Cir. 1976). *But see Clymore v. United States*, 164 F.3d 569, 574-75 (10th Cir. 1999) (adopting our approach in *Garcia*). We conclude, however, that Ebert's second argument is incompatible with the reasoning we used in *Garcia*. For example, the *Garcia* court reasoned that under Rule 41(e), venue is proper in the district of trial only during a "pending criminal proceeding" because "that is the only possible forum for a Rule 12 motion to suppress." *Garcia*, 65 F.3d at 20. This reasoning raises a puzzle we need not address, but its clear implication is that a "pending criminal proceeding" must at least be pending in the trial court.[3] Further, there is no indication in *Garcia* that proper venue for

---

[3]*Garcia* raises a puzzle because it appears to equate a "pending criminal proceeding" with "the only possible forum for a Rule 12 motion to suppress." If carried to its logical conclusion, this reasoning suggests that venue in the district of trial would be proper only during pre-trial proceedings because a motion to suppress must be made prior to trial. *See* Fed. R. Crim P. 12(b)(3). So far as we are aware, no court has ever given so narrow a reading to Rule 41(e)'s language regarding venue in the district of trial.

a Rule 41(e) motion depends on the status of the criminal case on appeal, nor are we aware of any case in any other jurisdiction that makes venue for a Rule 41(e) motion turn on whether the defendant's criminal case is still alive on direct review. Although *Garcia* leaves open some questions about when a proceeding is pending, we think that it has foreclosed the reading advanced by Ebert. At most, *Garcia* allows Rule 41(e) motions to be made in the district of trial while criminal proceedings are pending *in that court*. We therefore conclude that Ebert's second argument also fails. The district court correctly ruled that venue for Ebert's Rule 41(e) motions was proper only in the district of seizure.

We reach this result with some reluctance. From a policy standpoint, the facts of this case all point toward the conclusion that venue in the trial court should be proper. The trial court is far more familiar with the facts of the case than any court in New York, the property in dispute has long been stored in North Carolina, the government attorneys are in North Carolina, and Ebert wishes to litigate the motion in North Carolina. In short, all the relevant policy values — accurate fact-finding, judicial economy, the convenience of the government attorneys, and fairness to the defendant — suggest that Ebert's Rule 41(e) motions would best be heard in North Carolina. In contrast, we are aware of no relevant policies that are served by insisting that venue is proper only in the district of seizure.[4] Nevertheless, *Garcia* remains the binding law of this circuit, and we believe it dictates the conclusion that Ebert's Rule 41(e) motions regarding the office equipment and inventory seized from M & I could be made only in the district of seizure. We therefore affirm the district court's order dismissing those motions without prejudice.

*AFFIRMED*

---

[4]Because a party's right to a particular venue may be waived, the government could simply have consented to allow Ebert's Rule 41(e) motions to be heard in the Eastern District of North Carolina. While the government has the right under *Garcia* to insist that the motions be made in the district of seizure, we do not see how its insistence in this case served any legitimate government purpose.

NIEMEYER, Circuit Judge, dissenting:

Two weeks after Yitschak Ebert was sentenced in this case in the Eastern District of North Carolina, he filed a motion in the same court to obtain return of his property seized when he was arrested. The property, which had been seized in the Southern District of New York, was being stored in the Eastern District of North Carolina, where Ebert was tried. Ebert brought his motion for return of his property under Federal Rule of Criminal Procedure 41(e).

Rule 41(e) provides that a motion for return of property *may* be filed *in the district in which the property* was seized. It provides further, "If a motion for return of property is made or comes on for hearing *in the district of trial* after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12." Fed. R. Crim. P. 41(e) (emphasis added). These provisions establish that a motion under Rule 41(e) need not always be filed in the district of seizure but may also be filed in the district of trial. Of course if a motion is filed in the district of trial after an indictment or information is filed, it is to be treated as a motion to suppress. Thus, applying the plain language of Rule 41(e), the motion in this case could have been filed in either the Southern District of New York or the Eastern District of North Carolina.

However, in *United States v. Garcia*, 65 F.3d 17 (4th Cir. 1995), we noted, as a matter of practicality and convenience, that a Rule 41(e) motion may be filed in the district of trial only during a "pending criminal proceeding." *Id.* at 20. And we held in that case that because the criminal proceeding had "long since ended" and the trial court no longer exercised "control over the property," the Rule 41(e) motion should have been filed in the venue where the property was seized. *Id.*

But this case is quite distinct from the circumstances in *Garcia*. Here, the trial was not "long since ended" and the district court *did* have control over the property. Ebert had just been sentenced two weeks earlier, and his case was still pending, as it was on appeal. The property was located in the Eastern District of North Carolina, and the district court there would be the court most informed about its proper disposition.

It serves no useful principle — except perhaps the impracticality of deep bureaucracy — to now require Ebert to go back to New York to file his motion only to have the attorneys there consult the United States Attorneys and other court officials in the Eastern District of North Carolina with respect to the proper disposition of the motion. In ruling that Ebert must go to New York, the majority reads *Garcia* with the hard hand justified only in applying jurisdictional jurisprudence, not that called for when applying an optional venue principle. It is thus understandable that the majority found itself somewhat puzzled by the holding in *Garcia*, *ante* at 7-8, and that it sent Ebert to New York "with some reluctance," *ante* at 8.

Without the regrets expressed by the majority, I would readily reverse.